UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CAROL LEITNER

                                                                 Index No: 12 CIV 3778 (Seibel, C.)

                        Plaintiff,

        -against-

WESTCHESTER COMMUNITY COLLEGE, JOSEPH HANKIN, in his personal and official capacity as President of Westchester Community College, CHET ROGALSKI, in his personal and official capacity as Dean and Vice President of Academic Affairs, JIANPING WANG, in her personal and official capacity as Associate Dean of the Arts and Humanities, and GABRIELLE MILLER, in her personal and official capacity as Curricular Chairperson of the Communications and Media Arts Department

                        Defendants.
-------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

GAINES, GRUNER, PONZINI & NOVICK, LLP
11 Martine Avenue, 8th Floor
White Plains, NY 10606
914-288-9595

Of Counsel
    John M. Murtagh (JM5815)
    Denise M. Cossu (DC6900)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………………….ii

PRELIMINARY STATEMENT……………………………………………….............................1

ARGUMENT……………………………………………………………………………...….3

    POINT I

    PLAINTIFF HAS FAILED TO DEMONSTRATE THAT HER CLAIMS ARE NOT
    BARRED BY THE ELEVENTH AMENDMENT ……………………………………….3

    POINT II

    THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE FIRST AMENDMENT
    RETALIATION……………………………………………………………………………..6

    POINT III

    THE COMPLAINT FAILS TO PLAUSIBY ALLEGE AS-APPLIED VAGUENESS
    OR OVERBREATH CLAIMS……………………………………………………………..10

    POINT IV

    THE INDIVIDUAL DEFENDANTS ARE COVERED BY THE DOCTRINE OF
    QUALIFIED IMMUNITY……………………………………………………………….13

CONCLUSION……………………………………………………………….............................15

# TABLE OF AUTHORITIES

**Cases**

Becker v. City Univ. of N.Y., 94 F. Supp. 2d 487 (S.D.N.Y. 2000) ............................................... 4

Blasi v. The New York City Board of Education, 2012 U.S. Dist. LEXIS 113798 (E.D.N.Y 2012) ................................................................................................................................. 8

Cohen v. San Bernadino Valley Cottage, 92 F.3d 968 (9th Cir. 1996) ........................................ 12

Dambrot v. Central Michigan University, 55 F.3d 1177 (6th Cir. 1995) ........................................ 5

Davis v. Stratton, 575 F. Supp. 2d 410 (N.D.N.Y. 2008) ............................................................ 3,12

Dube v. The State University of New York, 900 F.2d 587 (2d Cir. 1990) ................................. 6, 14

Edmonds v. Central N.Y. Psychiatric Center, 2011 U.S. Dist. LEXIS 95497 (S.D.N.Y 2011) ............................................................................................................................. 13, 14

Giambalvo v. Sommer, 2012 U.S. Dist. LEXIS 141821 (S.D.N.Y. 2012) ............................ 13, 14

Garcetti v. Ceballos, 547 U.S. 410 (2006) .................................................................................... 6

Gollomp v. Spitzer, 568 F.3d 355 (2d Cir. 2009) .......................................................................... 3

Gorton v. Gettel, 554 F.3d 60 (2d Cir. 2009) ................................................................................ 5

Gorum v. Sessions, 561 F.3d 179 (3d Cir. 2009) .......................................................................... 9

Healy v. James, 408 U.S. 169 (1972) ............................................................................................ 7

Renken v. Gregory, 541 F.3d 769 (7th Cir. 2008) ......................................................................... 9

Kelly v. Huntington UFSD, 2012 U.S. Dist. LEXIS 45725 (E.D.N.Y. 2012) ............................... 7

Kenney v. Genesee Valley BOCES, 2008 U.S. Dist. LEXIS 8808 (W.D.N.Y. 2008) ................... 7

Keyshian v. Board of Regents, 385 U.S. 589 (1967) ..................................................................... 6

Kirby v. Yonkers Sch. Dist., 767 F. Supp. 2d 452 (S.D.N.Y. 2011) .............................................. 7

Kohlhausen v. SUNY Rockland Community College, 2011 U.S. Dist. LEXIS 42055 (S.D.N.Y. 2011) ..................................................................................................................... 3-5

Kracunas v. Iona College, 119 F.3d 80 (2d Cir. 1997) ................................................................ 7

Kramer v. New York City Board of Ed., 715 F. Supp.2d 335 (E.D.N.Y. 2010) ...................... 7, 10

Looney v. Black, 2012 U.S. App. LEXIS 26212 (2d Cir. 2012) ............................................... 13

Mahoney v. Hankin, 844 F.2d 64 (1988) ................................................................................ 7, 14

Malkan v. Mantua, 2012 U.S. Dist. LEXIS 143311 (W.D.N.Y. 2012) ........................................ 5

Marchi v. BOCES, 173 F.3d 469 (2d Cir. 1999) ........................................................................ 10

Massaro v. New York City Department of Education, 2012 U.S. App. LEXIS 10911 (2d Cir. 2012) ........................................................................................................................... 9

Matter of Watt, 85 A.D.2d 1357, N.Y.S.2d 681 (3d Dept. 2011) ................................................ 8

McCauley v. University of the Virgin Islands, 618 F.3d 232 (3d Cir. 2010) ............................. 12

Mills v. Western Washington University, 208 P.3d 13 (Court of Appeals of Washington, Division One 2009) ..................................................................................................... 8, 12

Mount Healthy City School District v. Doyle, 429 U.S. 274 (1977) ........................................... 6

Nichols v. The University of Southern Mississippi, 669 F. Supp.2d 684 (S.D. Miss. 2009) ...... 9

Pasternak v. Baines, 2006 U.S. Dist. LEXIS 62898 (W.D.N.Y. 2006) ....................................... 5

Peoples v. Fischer, 2012 U.S. Dist. LEXIS 88475 (S.D.N.Y. 2012) ......................................... 13

Pickering v. Board of Ed., 391 U.S. 563 (1968) .......................................................................... 6

Piggee v. Carl Sandburg College, 464 F.3d 667 (7th Cir. 2006) ................................................. 9

Planck v. SUNY Board of Trustees, 18 A.D.3d 988, 795 N.Y.S.2d 147 (3d Dept. 2005) ........... 5

Renken v. Gregory, 541 F.3d 769 (7th Cir. 2008) ....................................................................... 9

Silva v. The University of New Hampshire, 888 F.Supp. 293 (D.N.H. 1994) ........................... 12

Staskowski v. County of Nassau, 2006 U.S. Dist. LEXIS 84194, 2006 (E.D.N.Y.2006).............. 4

Weintraub v. Board of Education of the City of New York, 593 F.3d 196 (2d Cir. 2010) ............ 7

Vega v. Miller, 273 F.3d 460 (2d Cir. 2001) ........................................................................ 11, 14

VIP of Berlin, LLC v. Town of Berlin, 593 F.3d 179 (2d Cir. 2010).......................................... 11

Virginia v. Hicks, 539 U.S. 113, 119 (2003) ............................................................................... 12

Ya-Chen Chen v. The City University of New York, 2011 U.S. Dist. LEXIS 130094 (S.D.N.Y.

    2011) ...................................................................................................................................... 5

**Statutes**

42 U.S.C. §1983................................................................................................................... 3, 9

NY Education Law §6301-§6306 ..................................................................................... passim

**Other Authorities**

Darryn Cathryn Beckstrom, *Note: Reconciling the Public Employee Speech Doctrine and*

    *Academic Speech After Garcetti v. Ceballos,* 94 Minnesota Law Review 1202 (2010)..14

Thomas Keenan, *Note: Circuit Court Interpretations of Garcetti v. Ceballos, and the*

    *Development of Public Employee Speech*, 87:2 Notre Dame Law Review 841 (2011)..14

Paul Foster, *Teaching in a Democracy: Why the Garcetti Rule Should Apply to Teaching in*

    *Public Schools*, 46:3 Gonzaga Law Review, 687 (2010/2011............................. 14

John W. Murry, Jr., *Academic Freedom and Goverance: An Anaylsis of Garcetti v. Cellabos and*

    *its Aftermath* , Journal of Research in Education, Vol. 20, Number 1,

        http://www.eeraonline.org/journal/files/v20/JRE_v20nl_Article_8_Murry.pdf.............8

## PRELIMINARY STATEMENT

The defendants Westchester Community College ("WCC"), Joseph Hankin, Chet Rogalski, Jianping Wang, and Gabrielle Miller ("Individual Defendants") (collectively referred to as "Defendants") respectfully submit this memorandum of law in reply to the Plaintiff's memorandum of law submitted in opposition (hereinafter, "Opposition") and in further support of their motion to dismiss the Complaint dated May 11, 2012 (hereinafter, "Motion").[1]

Plaintiff's attempted restatement of Defendants' Eleventh Amendment immunity argument, when the question of whether a SUNY community college, such as WCC enjoys such immunity has already been addressed and determined in favor of such immunity, is wholly unpersuasive. The issue, as framed by this Court, was correct: whether WCC is a SUNY school and part of the SUNY system. If so, then the Plaintiff was directed to discontinue those claims barred by the Eleventh Amendment. In response to the Court's suggestion, Defendants made an extensive evidentiary showing demonstrating that WCC is unequivocally a SUNY school. However, Plaintiff seeks to ignore the District Courts, including the Southern District, that have already determined that SUNY community colleges are covered by the doctrine, notwithstanding their relationship to their County sponsors. Plaintiff's tortured logic and purported legal argument employed in service to the proposition that Rockland Community College as well as Schenectady County Community College are covered by Eleventh Amendment immunity, but that Westchester Community College is not, flies in the face of Southern District precedent and must fail.

In addition, Plaintiff confuses speculation, conclusion and self-serving pronouncements with the factual allegations necessary to plausibly set forth her claims. Her casual misapplication

---

[1] A true and correct copy of the Complaint (hereinafter referred to as "Compl.") is attached to the Motion as Exhibit "1."

of the loaded term "academic freedom" does not imbue insulting and personally offensive utterance with First Amendment protection. She mischaracterizes her belittling and peronal attacks on her students as "frank criticism;" she mischaracterizes the Students Rights and Responsibilities portion of the WCC Student Handbook as an "unconstitutionally vague" "faculty speech code;" and she further mischaracterizes her comments regarding "illegal immigrants" as "expressing a politically conservative viewpoint," which she now contends, was the sole basis for her dismissal. Remarkably, this most recent iteration of Plaintiff's claims disowns her own pleading, in a blatant attempt to change her theory of the case and ignore the years long litany of student complaints for which she had been counseled by her Department Chair and her Dean, disciplined, and ultimately terminated in accordance with her collective bargaining agreement.[2]

Far from arguing a "different view of the facts," Defendants have simply provided documents to which the Complaint, itself, refers such as the 1983 Memorandum, the Ax Decision, portions of the WCC Student Handbook, the Step One, Step Two and Step Three Letters, disciplinary proceedings and underlying student complaints, as well as those matters of which judicial notice may be taken, such as the Incident Report filed with WCC Security, the Carmel Police Report, and Plaintiff's resultant suspension and removal from the priority list of the Communications, Journalism, and Performing Arts Department. That these documents do not comport with Plaintiff's inflammatory, conclusory and unsupported assertions, does not indicate

---

[2] Plaintiff's failure to file a grievance relating to the Step Three hearing, and her previous failures to grieve the Step One or Step Two processes or the resultant letters and recommendations to her are not somehow preserved by the commencement of the instant action and the repetitive reliance upon catch phrase terminology, does not suffice to transform a garden variety employment termination into a constitutional violation.

a "different view," but rather, constitute the pleaded facts, albeit stripped of Plaintiff's rhetoric and speculation, and upon which no constitutional violation may be predicated.[3]

## ARGUMENT

**POINT I:   PLAINTIFF HAS FAILED TO DEMONSTRATE THAT HER CLAIMS ARE NOT BARRED BY THE ELEVENTH AMENDMENT**

As fully briefed and discussed in the original dismissal motion, Defendants have demonstrated by the tender of incontrovertible documentary evidence and legal precedent that WCC is part of the SUNY system and, as a result, is entitled to sovereign immunity with respect to all of Plaintiff's 42 U.S.C. §1983 claims. Kohlhausen v. SUNY Rockland Community College, 2011 U.S. Dist. LEXIS 42055 (S.D.N.Y. 2011); Davis v. Stratton, 575 F. Supp. 2d 410 (N.D.N.Y. 2008).

The Opposition, which ignores both the factual foundation and legal precedent supporting this conclusion, fails in its argument and its reliance upon Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009), in support of a "six factor" analysis is misleading. As indicated in that case, the "ultimate inquiry" involves an "overall assessment of the relationship between the State and the entity in question. *Id.* In making such an overall assessment, the district courts in this Circuit that have addressed the issue of Eleventh Amendment immunity and community colleges have

---

[3] If anything, Plaintiff's purported statement of facts is but an amalgam of opinion, speculation and self-aggrandizement, none of which defeats dismissal. For example, the self-serving statement that Plaintiff "held her students to the highest standards and gave them realistic assessments of their performance" (Opp. at p. 4) simply reflects Plaintiff's inflated opinion of her own teaching style and skill, unsupported by any factual allegation. Similarly, the contention that WCC "changed its view of education and began to enforce a lenient approach to teaching, prioritizing student feelings over real improvement and academic standards" (Opp. at 4), is again predicated solely upon Plaintiff's speculation and opinion, with no supporting factual basis. Indeed, the documents proffered in support of the Motion, demonstrate a very different scenario: one in which Plaintiff had been counseled and disciplined over a number of years regarding the "disturbing pattern of student complaints" that Plaintiff "belittled, disrespected and humiliated them." As stated in the Step Two Letter, which Plaintiff did not grieve, the "abusive, belittling techniques" in which Plaintiff engaged were "contrary to the professional association and to practices and procedures in the department" and "not academic freedom" (Motion at Exhibit 17). The argument that she was disciplined "because of" her political ideas (Opp. at p. 6), takes Acting Chairperson Miller's concerns regarding Plaintiff's abusive and belittling manner and its effect on her students, concerns that were also expressed by her predecessor, Dr. Shea and the WCC administration, totally out of context, in a transparent effort to create a constitutional issue, where none actually exists. Stripped of its self-serving argumentative verbiage, the Opposition brings Plaintiff no closer to plausibly pleading her claim beyond a speculative level.

unequivocally found such immunity to apply. Indeed, Kohlhausen directly addressed the very same contentions Plaintiff makes here, and dismissed them outright. Contrary to Plaintiff's unsupported assertions, the financial contributions of the local sponsor to the community college, does not disqualify the college from claiming Eleventh Amendment immunity. Far from being an attempt to "duck the issue" as Plaintiff contends, the financial relationship between SUNY and WCC is a significant factor supporting Eleventh Amendment immunity. WCC is accountable to and dependent upon the State in its formation, its operation and its funding, with one third of the operating costs of WCC paid by New York and one third paid by tuition costs, over which the SUNY Trustees exercise control. *See*, NY Education Law §6304.[4]

Accordingly, as held by the Kohlhausen court, which holding bears repeating here:

> [D]espite the fact that local sponsors are significant partners in the relatively independent operation of community colleges such as SUNY Rockland, the community colleges are "ultimately accountable to, and dependent upon, the state." *Clissuras, 359 F.3d at 83* (quoting *Becker v. City Univ. of N.Y., 94 F. Supp. 2d 487, 490 (S.D.N.Y. 2000)*). In light of this determination -- and considering similar holdings in this Circuit, see *Davis, 575 F. Supp. 2d 410*; see also *Staskowski v. County of Nassau, No. 05-CV-5984, 2006 U.S. Dist. LEXIS 84194, 2006 WL 3370699, at *1 (E.D.N.Y. Nov. 16, 2006)* -- the Court finds SUNY Rockland enjoys Eleventh Amendment immunity, as an arm of the state.

---

[4] A Gollomp analysis does not warrant a different result. The "documents of origin" show that WCC was initially established and financed solely by the State of New York and then became part of the State University of New York. Westchester County, as the local sponsor, had to obtain SUNY authorization and approval before WCC could be established as a community college, and did obtain such from the SUNY Board of Trustees pursuant to New York Education Law and WCC continues to be represented by SUNY as one of the community colleges in the SUNY system. NY Education Law §§6301(3) and 6302; *see*, Motion at Exhibit 3; *see also*, http://www.suny.edu/About_SUNY/ourcampuses.cfm. In addition, SUNY significantly participates in the governance of WCC insofar as four out of ten members of the Board of Trustees are appointed by the Governor of the State of New York and the WCC President must be approved by the SUNY Board of Trustees. NY Education Law §6306. SUNY also exercises control over WCC's curriculum, which is developed with the assistance and guidance of the SUNY Trustees and is subject to their approval and to any amendments or modifications that they may from time to time prescribe. NY Education Law §§6303(2), 6303(4), 6306. In addition, WCC credits are fully transferable to the four year colleges in the SUNY system. *See*, Motion at Exhibit 3. The "overall assessment" in light of these considerations supports the conclusion that WCC is part of the SUNY system, and an "arm of the State" entitled to Eleventh Amendment immunity.

Kohlhausen, 2011 U.S. Dist. LEXIS 42055 at *21-*24.[5]

Plaintiff's argument that her claims for reinstatement are not barred by the Eleventh Amendment is also unavailing. Ya-Chen Chen v. The City University of New York, 2011 U.S. Dist. LEXIS 130094 (S.D.N.Y. 2011) is directly on point and supports such a bar in this case. As discussed in the Motion, and not distinguished by Plaintiff, except to say that it was "cherry-picked" by Defendants, Justice McMahon made the 'straightforward inquiry into whether [the] complaint allege[d] an ongoing violation of federal law and [sought] relief properly characterized as prospective' and found that it did not, therefore extending the Eleventh Amendment immunity bar to the plaintiff's claims for reinstatement. In doing so, she noted that, like the allegations here, the claims raised in the complaint constituted discrete acts of alleged retaliation which were not ongoing, since the plaintiff's employment had been terminated, held that reinstatement to an employment position as compensation for past instances of allegedly unlawful conduct is not prospective equitable relief pursuant to Ex parte Young, and dismissed those claims seeking reinstatement, as well. Chen, 2011 U.S. Dist. 130094 at *22-*24; *see also*, Pasternak v. Baines, 2006 U.S. Dist. LEXIS 62898 (W.D.N.Y. 2006). The same result should pertain here.[6]

---

[5] Plaintiff's reiteration of those cases cited in her counsel's earlier letter response (Motion, Exhibit 4) does not advance her cause. Insofar as those cases have been addressed in the original motion and distinguished they will not be discussed further here. Suffice it to say that not one of the cited cases addresses the applicability of Eleventh Amendment immunity to community colleges. Planck v. SUNY Board of Trustees, 18 A.D.3d 988, 795 N.Y.S.2d 147 (3d Dept. 2005) which Plaintiff cites, does involve Schenectady County Community College ("SCCC") and when the issue of such immunity was addressed, SCCC, "an entity of the SUNY system," was determined to be covered by the Eleventh Amendment. *See*, Davis v. Stratton, 575 F. Supp. 2d 410, 424 (N.D.N.Y. 2008). Similarly, reliance upon Gorton v. Gettel, 554 F.3d 60, 63 (2d Cir. 2009) is distinguishable insofar as it does not discuss SUNY community colleges at all, but rather local Boards of Education, which are separate and distinct governmental entities, and not an "arm of the state." Furthermore, Plaintiff's disagreement with Kohlhausen does not render its holding incorrect. It remains that when the issue of the applicability of the Eleventh Amendment to community colleges in the SUNY system has been addressed, courts have extended such immunity to them.

[6] Citation to Malkan v. Mantua 2012 U.S. Dist. LEXIS 143311 (W.D.N.Y. 2012), premised upon due process arguments relating to notice and an opportunity to be heard, is not relevant here where Plaintiff participated in disciplinary hearings resulting from multiple student complaints, culminating in her dismissal. At no point in the process did Plaintiff request a name clearing or file a grievance relative to the findings.

**POINT II:    THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE FIRST AMENDMENT RETALIATION**

Plaintiff concedes that the Complaint does not plausibly allege that she spoke as a citizen, rather than as a public employee and attempts to elevate an employee grievance to constitutional protection, and insulate herself from discipline. On that basis, alone, dismissal of the Complaint is warranted because Plaintiff's speech was not constitutionally protected. Garcetti v. Ceballos, 547 U.S. 410 (2006). Instead, she asserts two arguments in opposition: (1) that her in-class speech, no matter how hurtful or outrageous, was protected under the First Amendment because she was a college professor and (2) that whether the restrictions imposed on her in-class speech were reasonably related to a pedagogical concern is a question of fact. Neither result was contemplated by Dube v. The State University of New York, 900 F.2d 587 (2d Cir. 1990) a pre-Garcetti case upon which Plaintiff heavily relies, nor Garcetti which declined to address whether its rule "would apply in the same manner to a case involving scholarship or teaching." *Id.,* 547 U.S. at 424. Contrary to the gloss Plaintiff attempts to engraft upon Dube, it *does not* stand for the Plaintiff's overriding (and incorrect) proposition that the in-class speech of a college professor is analyzed differently than the in-class speech of a primary or secondary school teacher. Indeed, in noting that the First Amendment "tolerates neither laws nor other means of coercion, persuasion or intimidation 'that cast a pall of orthodoxy' over the free exchange of ideas in the classroom," the Dube Court did not limit its reach solely to speech in a college setting, but relied upon precedent regarding colleges (Keyshian v. Board of Regents, 385 U.S. 589 (1967)), as well as primary and secondary school (Mount Healthy City School District v. Doyle, 429 U.S. 274 (1977), Pickering v. Board of Ed., 391 U.S. 563 (1968)). Plaintiff cites no

6

case, and indeed there are no cases, that exempt the speech of a college professor from the Garcetti analysis.[7]

Conversely, Healy v. James, 408 U.S. 169 (1972), which Plaintiff cites to support her claim, does not even deal with a college professor's in-class speech, but rather with a group of college students and their petition to the university to permit them to organize a chapter of Students for a Democratic Society ("SDS") on campus. Reliance upon Kracunas v. Iona College, 119 F.3d 80 (2d Cir. 1997) also does not advance Plaintiff's false claim, and in fact supports the conclusion that restrictions on the inappropriate harassing speech of college professors are not only warranted, but required. In that case, Iona College raised the defense of academic freedom in an attempt to shield itself from the imputation of liability for the verbal harassment perpetrated by one of its professors upon his students, arguing that it "would severely restrict [academic] freedom, as colleges, in an attempt to avoid liability, would be forced to monitor their professor's speech and teaching material. Such meticulous oversight also may risk infringing the professors' professional agreements and First Amendment rights." *Id.* at 87. However, the Second Circuit rejected that argument, finding that it had "no sound basis" since the professor's conduct could

---

[7] The Court is respectfully referred to Defendants' reliance upon Weintraub v. Board of Education of the City of New York, 593 F.3d 196 (2d Cir. 2010); Kelly v. Huntington UFSD, 2012 U.S. Dist. LEXIS 45725 (E.D.N.Y. 2012); Kirby v. Yonkers Sch. Dist., 767 F. Supp. 2d 452 (S.D.N.Y. 2011); Kramer v. New York City Board of Ed., 715 F. Supp.2d 335 (E.D.N.Y. 2010); Kenney v. Genesee Valley BOCES, 2008 U.S. Dist. LEXIS 8808 (W.D.N.Y. 2008), which cases Plaintiff was unable to distinguish and failed to address except to argue, dismissively and incorrectly, that they were "irrelevant" because they were not decided in the context of a college setting. It is respectfully submitted that these cases remain both instructive and dispositive but in the interest of judicial economy, will not be further discussed here. The pre-Garcetti case, Mahoney v. Hankin, 844 F.2d 64 (1988)
, also mentioned by Plaintiff is factually distinguishable and ultimately has no precedential effect. In that case, plaintiff professor, a longtime political adversary of the defendant, was involved in an investigation into accusations leveled against the defendant regarding the inappropriate use of student funds. After the investigation began, the defendant sent a letter to the plaintiff advising him not to discuss current college matters in the classroom, because to do so would violate the collective bargaining agreement. Plaintiff brought a civil rights action alleging that this letter violated his right to free speech. The defendants moved for judgment based upon qualified immunity, which was denied and an interlocutory appeal was brought. The Second Circuit dismissed the appeal, holding that, as the determination of qualified immunity in that case raised issues of fact as to how a reasonable college administrator would interpret the collective bargaining agreement, the order of the district court was not final and therefore, not appealable. *Id.* at 67.

7

not reasonably be seen as appropriate to further a pedagogical purpose. "Harassing conduct ... is not entitled to constitutional protection" *Id.* at 88.

Here, the issues of academic freedom raised by and protected in <u>Dube</u> are not in any way equivalent to Plaintiff's belittling and derogatory comments made to her students, comments for which she was repeatedly counseled and disciplined. The effort to restrict Plaintiff's purported "academic freedom" claim solely to statements she made regarding illegal immigration to a Mexican student, does not transmute her history of ethnic slurs and disparaging comments into protected "speech related to scholarship or teaching," regardless of how she attempts to bootstrap it to a purported "group discussion about social issues" (Opposition at p. 12), nor do Professor Miller's concerns, taken out of context and misrepresented (Opposition at p. 14), convert Plaintiff's comments into protected "political speech." As noted by Dr. Shea, abusive and belittling techniques utilized by Plaintiff in the classroom and undertaken under the guise of instruction, "[are] not academic freedom."[8]

Contrary to the implication Plaintiff seeks to impose that federal courts have not applied <u>Garcetti</u> to a college professor's in-class speech, a review of the case law and academic writings actually indicates that "[m]ost courts since the decision in <u>Garcetti</u> have favorably applied the Supreme Court's analysis to cases involving contested faculty speech in public higher education." John W. Murry, Jr., *Academic Freedom and Governance: An Analysis of Garcetti v. Ceballos and its Aftermath*, Journal of Research in Education, Vol. 20, Number 1,

---

[8] *See,* <u>Blasi v. The New York City Board of Education</u>, 2012 U.S. Dist. LEXIS 113798 at *99 (E.D.N.Y. 2012) (holding that under <u>Garcetti</u>, the expression of a plaintiff's personal viewpoints in the course of teaching his students about current events is not protected speech); <u>Mills v. Western Washington University</u>, 208 P.3d 13 (Court of Appeals of Washington, Division One 2009) (holding that verbal abuse and intimidation in the classroom did not implicate academic freedom); *see also,* <u>Matter of Watt</u>, 85 A.D.2d 1357, 925 N.Y.S.2d 681 (3d Dept. 2011) (holding that physical education teacher's remarks to student, "hey, Hispanic kid, run like you're running to the border" were not protected speech. Under <u>Garcetti</u>, free speech rights are not violated when discipline is imposed upon teachers "for directing ethnic slurs or disparaging comments towards students in class. The ethnic comment was deemed offensive or embarrassing by several students and was the proper subject of discipline.")

8

http://www.eeraonline.org/journal/files/v20/JRE_v20n1_Article_8_Murry.pdf. [9]

Plaintiff's further argument as to the alleged pedagogical purpose for Plaintiff's in-class speech does not succeed in defeating dismissal and is simply a "red-herring" designed to deflect this Court's attention from Plaintiff's inability to establish that her speech was protected under the First Amendment. She has failed to plead, and indeed cannot plausibly assert that she engaged in her in-class speech as a citizen on a matter of public concern. Having failed to do so, Plaintiff cannot, as a matter of law, plausibly allege that her speech is constitutionally protected. *See generally,* Massaro v. New York City Department of Education, 2012 U.S. App. LEXIS 10911 (2d Cir. 2012) at *2-*3 (no First Amendment cause of action if plaintiff either did not speak as a citizen or did not speak on a matter of public concern). Furthermore, as conceded in the Complaint and discussed at length in the Motion, Plaintiff had a history of student complaints arising from her belittling and abusive in-class speech, which resulted in disciplinary action, authorized by the collective bargaining agreement and the Ax Decision. Plaintiff never filed a

---

[9] For example, Gorum v. Sessons, 561 F.3d 179 (3d Cir. 2009) involved a tenured professor who was dismissed from Delaware State University. The professor alleged that his dismissal was retaliation by the university's president for engaging in speech and association protected by the First Amendment. The district court in granting the university's motion for summary judgment, noted that the professor failed to show that he was speaking as a citizen rather than as an employee. On appeal, the Circuit Court affirmed the dismissal, cited Garcetti, and held that the First Amendment does not shield the consequences of "expressions employees make pursuant to their professional duties." In Renken v. Gregory, 541 F.3d 769 (7th Cir. 2008), a tenured professor filed a complaint pursuant to 42 U.S.C. §1983 asserting that University officials had retaliated against him for exercising his First Amendment rights when he complained about the University's use of grant funds. The district court granted summary judgment in favor of the University and the Circuit Court affirmed and applied Garcetti, holding that because the professor's speech was made as an employee and not as a private citizen it was not protected by the First Amendment. In Nichols v. The University of Southern Mississippi, 669 F. Supp.2d 684 (S.D. Miss. 2009), a non-tenured faculty member in the School of Music engaged in a classroom discussion about homosexuality and the entertainment industry. A homosexual student in the class became upset with particular comments made by the professor and reported them to another faculty member. The incident was then reported to the dean. The professor was not offered a new contract and he subsequently filed suit in federal district court alleging, in part, that his First Amendment rights had been violated. The district court dismissed the complaint, noting that while "[h]omosexuality and AIDS could generally be considered matters of public concern as they have been the center of intense public debate ... the statements were made in a classroom setting by a professor to a student, and the courts have consistently taken a broad view of what constitutes classroom speech that is not afforded protection under the First Amendment. Because of its form and context, this speech is best characterized as speech made in [plaintiff's] official capacity and is not afforded protection under the First Amendment. [*internal citiations* omitted] *Id.,* 669 F. Supp.2d at 698-699; *see also,* Piggee v. Carl Sandburg College, 464 F.3d 667 (7th Cir. 2006).

grievance with respect to any disciplinary action taken against her and cannot now, under the pretense of "academic freedom" or purported First Amendment protection resurrect the underpinnings and findings of those disciplinary meetings and hearings in an effort to re-cast her abusive, belittling, humiliating and insulting behavior, as constitutionally protected. Her actions were consistently found to be inconsistent with WCC's policies, detrimental to students' learning, and contrary to her professional obligations. Those findings were not contested and although the Court need not even reach the question, the Court may use its common sense in determining that Defendants' actions were "reasonably related to a legitimate pedagogical concern" in dismissing the Complaint.

**POINT III:   THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE AS-APPLIED VAGUENESS OR OVERBREADTH CLAIMS**

It is undisputed that the sole bases for the Complaint's as-applied vagueness claims are a provision of the WCC Student Handbook and the Step Two letter. Neither document supports this contention. The Student Handbook provision, which Plaintiff christens a "WCC faculty speech code" (Opp. at 1) does not constrain or limit speech at all, let alone "faculty speech" by its statement that "a student should be treated with courtesy and respect" (Motion at Exhibit 5). The Step Two letter which "encourage[d]" Plaintiff to "reexamine [her] classroom demeanor" in an effort to curtail future student complaints regarding her "belittling, humiliating and insulting remarks or behavior toward them" (Motion at Exhibit 17) also does constitute an impermissibly vague "directive to avoid 'offensive' speech." In addition, notwithstanding Plaintiff's purported reliance upon "ample precedent," she cites no New York authority supporting her claim.

Marchi v. BOCES, 173 F.3d 469 (2d Cir. 1999), which Plaintiff does cite, was discussed at length in the Motion and actually supports dismissal. (*See*, Memorandum In Support of Motion at pages 31-32). In Kramer v. New York City Board of Education, 715 F. Supp.2d 335

10

(E.D.N.Y. 2010), plaintiff schoolteacher was disciplined for her use of sexually explicit words when teaching about HIV transmission. The court found that in disciplining the plaintiff the school had improperly relied upon a regulation prohibiting "verbal abuse," that by its own terms did not apply to plaintiff's conduct and that as a result, she did not have adequate notice that using sexually explicit terms for appropriate instructional purposes was prohibited. In this case, Plaintiff was counseled, received extensive guidance from her supervisors, and as a result had adequate notice of the behavior for which she was and would be disciplined. Vega v. Miller, 273 F.3d 460 (2d Cir. 2001) also does not bolster Plaintiff's position. In fact, in that case, notwithstanding purported vagueness issues with respect to the application of the College's sexual harassment policy, the Second Circuit dismissed the entire complaint on qualified immunity grounds.[10] VIP of Berlin, LLC v. Town of Berlin, 593 F.3d 179 (2d Cir. 2010) does not deal with in-class teacher speech at all, but with a local ordinance plaintiff claimed to be impermissibly vague in its use of the term "substantial or significant portion" as applied to adult merchandise, which it claimed failed to provide it with adequate notice that its proposed inventory of books would qualify it as an adult oriented store subject to the Town's sexually oriented business ordinance. The Second Circuit applied the "common, ordinary meaning of the ordinance's words" to the plaintiff's business, upheld the ordinance, and found the business to be covered by it. Similarly, as discussed in the Motion, the words about which Plaintiff complains, such as "courtesy and respect" "courteous," "respectful," "offensive," "insulting," "belittling"

---

[10] Defendants make the same argument here, warranting the same result. The contention that they waived qualified immunity under these circumstances is without merit. Plaintiff alleges that she was terminated because of her in-class expression of a politically conservative point of view. As in Vega, Plaintiff claims that the First Amendment prevented Defendants from disciplining her for this conduct and as in Vega, "whether or not that claim is valid," Defendants have a qualified immunity defense which also extended to the application of the allegedly vague policy.

11

and "humiliating" are capable of understanding by the application of their common ordinary meaning and not impermissibly vague.[11]

Regardless of the "distinct" law that governs overbreadth and vagueness claims, Plaintiff persists in confusing the two, interchanging her arguments, but never actually explaining how overbreadth applies to the Defendants' actions in this case. Neither the Student Handbook, nor the Step Two Letter upon which her purported claim is predicated are laws, regulations or ordinances to which the overbreadth doctrine applies. As noted in Virginia v. Hicks, 539 U.S. 113, 119 (2003), "for overbreadth to apply, the law's application to protected speech must be "substantial," not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications, before applying the "strong medicine" of overbreadth invalidation"(*internal citations omitted*). Plaintiff has wholly failed to plausibly allege that the Student Handbook's purported application to protected speech is substantial or whether it even specifically addresses speech at all. The Step Two letter applies only to Plaintiff and does not address protected speech at all. Under these circumstances, Plaintiff's overbreadth claims fail. *Id.* at 124 ("Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is

---

[11] The non-New York cases upon which Plaintiff relies also do not assist in her attempt to plausibly plead her due process claims. For example, McCauley v. University of the Virgin Islands, 618 F.3d 232 (3d Cir. 2010) dealt with the application of a school regulation to a student's non-classroom speech. This case, by contrast, involves a teacher's in-class speech, student complaints regarding that speech, and the administration's attempts to resolve those complaints. Neither the Student Handbook nor the Step Two letter constitutes an impermissibly vague "regulation" as applied to Plaintiff. By contrast, in Cohen v. San Bernadino Valley College, 92 F.3d 968 (9th Circuit 1996), the court found that the college's new sexual harassment policy was too vague as applied to the plaintiff professor because it did not give him adequate notice that teaching methods that he had been using for many years would now be prohibited. This case was distinguished post-Garcetti in Mills v. Western Washington University, *supra.* In Mills, the court specifically noted that the verbal abuse and intimidation the plaintiff professor directed at his students, which gave rise to student complaints, was not protected speech. In addition, the court held that the plaintiff's vagueness arguments were without merit because plaintiff had been repeatedly advised by school officials of the type of conduct considered to be unacceptable under the Faculty Handbook. Similarly, in the case at bar, although there is no "Faculty Handbook," Plaintiff was repeatedly advised by her supervisors of the type of conduct that was unacceptable. Silva v. The University of New Hampshire, 888 F.Supp. 293 (D.N.H. 1994) also addressed the lack of notice to a tenured professor that his classroom speech violated a sexual harassment policy. In Dambrot v. Central Michigan University, 55 F.3d 1177 (6th Cir. 1995), the court was concerned that an affirmative action policy would "reach a substantial amount of protected speech," notably, however, it upheld the plaintiff-coach's termination because his speech was not protected by the First Amendment.

not *specifically* addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating")(emphasis added). The claim that "in certain circumstances," the determination as to overbreadth is a factual one, does not apply here and certainly does not serve to enable discovery where the purported "laws," i.e., the Handbook and the letter are capable of being understood in light of their plain meaning and additionally, by virtue of the history of student complaints and the Defendants' actions in attempting to resolve them. The hypothetical claim that the First Amendment rights of other WCC faculty may be impacted by the enforcement of the Student Handbook is neither tenable nor substantial as alleged and the "strong medicine" of overbreadth does not apply.

**POINT IV:   THE INDIVIDUAL DEFENDANTS ARE COVERED BY THE DOCTRINE OF QUALIFIED IMMUNITY.**

Plaintiff also makes the sweeping proclamation that qualified immunity is inappropriate at the pleadings stage and that the alleged "unlawfulness" of the Defendants' actions were "readily apparent." She is incorrect in both instances. The defense of qualified immunity may be raised and decided at the pleadings stage on a motion to dismiss. Looney v. Black, 2012 U.S. App. LEXIS 26212 (2d Cir. 2012). In addition, as this Court readily noted, Plaintiff's purported First Amendment claim is far from being "readily apparent" and the "muddiness of the law [on the issue of protected speech] is … helpful to the individuals in terms of qualified immunity" (Motion, Exhibit 2, at p. 12).

The cases cited in the Opposition are distinguishable and do not serve to deny the Individual Defendants qualified immunity. For example, Peoples v. Fischer, 2012 U.S. Dist. LEXIS 88475 (S.D.N.Y. 2012), Giambalvo v. Sommer, 2012 U.S. Dist. LEXIS 141821 (S.D.N.Y. 2012) and Edmonds v. Central N.Y. Psychiatric Center, 2011 U.S. Dist. LEXIS 95497 (S.D.N.Y 2011), upon which Plaintiff relies to support the contention that discovery is required

before a court may determine that qualified immunity should be applied to the Individual Defendants' actions, involved the plaintiffs-prisoners' clearly established Eighth Amendment right to be free from cruel and unusual punishment. In Peoples, the Supreme Court and Second Circuit had already determined that lengthy durations of solitary confinement as alleged by plaintiff can constitute cruel and unusual punishment, prohibited by the Eighth Amendment and as a result, qualified immunity could not be determined at the pleading stage. Similarly, in Giambalvo and Edmonds, the plaintiffs' allegations were sufficient to allege "deliberate indifference," also proscribed by the Eighth Amendment. In each of these cases, the alleged unlawfulness of the individual defendants' actions was clearly established under the law at the time of the alleged events. Thus, while qualified immunity could ultimately shield the defendants in those cases from liability, a final determination had to await factual development relating to whether and how the individual defendants' actions in those cases were "objectively reasonable" under the circumstances.

In this case, Plaintiff's claims are not clearly established and her citation to Dube, Vega, and Mahoney, all pre- Garcetti, does not advance her claim. *See,* Paul Forster, *Teaching in a Democracy: Why the Garcetti Rule Should Apply to Teaching in Public Schools*, 46:3 Gonzaga Law Review, 687 (2010/2011); Darryn Cathryn Beckstrom, *Note: Reconciling the Public Employee Speech Doctrine and Academic Speech After Garcetti v. Ceballos*, 94 Minnesota Law Review 1202 (2010); Thomas Keenan, *Notes: Circuit Court Interpretations of Garcetti v. Ceballos and the Development of Public Employee Speech,* 87:2 Notre Dame Law Review 841 (2011).

In addition, Dube, involved the status of a professor on a tenure track and subjects directly related to the course he was teaching, although they were thought to be unacceptable by

14

another professor. Mahoney involved the meaning that a reasonable college administrator would attach to the collective bargaining agreement which was deemed to be a question of fact, not law. In Vega, the Second Circuit dismissed the complaint as against the individual defendants on qualified immunity grounds because under the state of the law as it existed at the time, they could have reasonably believed that they were not violating a professor's First Amendment rights when they disciplined him for not terminating an offensive classroom exercise. In this case, unlike Dube, Plaintiff is a non-tenured part time teacher, who historically engaged in abusive and belittling techniques and incited offensive classroom discussion unrelated to the course she was teaching. Under these circumstances, the Court may determine the issue of qualified immunity solely on the law, and without need for factual development and as in Vega, qualified immunity because the Individual Defendants, could have reasonably believed under the state of the law as it existed at the time of their allegedly unlawful actions, that they were not violating Plaintiff's First Amendment rights when they disciplined her.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's claims as against Defendants with prejudice, together with such other and further relief as the Court may deem just and proper.

Dated: White Plains, New York
January 7, 2013

GAINES, GRUNER, PONZINI & NOVICK, LLP

By: /s/ Denise M. Cossu
John M. Murtagh (JM 5815)
Denise M. Cossu (DC 6900)
Attorneys for Defendants
11 Martine Avenue, 8th Floor
White Plains, New York 10606
(914) 288-9595

15