UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
CAROL LEITNER

Index No:  12 CIV 3778 (Seibel, C.)

Plaintiff,

-against-

WESTCHESTER COMMUNITY COLLEGE, JOSEPH
HANKIN, in his personal and official capacity as
President of Westchester Community College, CHET
ROGALSKI, in his personal and official capacity as
Dean and Vice President of Academic Affairs,
JIANPING WANG, in her personal and official capacity
as Associate Dean of the Arts and Humanities, and
GABRIELLE MILLER , in her personal and official
capacity as Curricular Chairperson of the
Communications and Media Arts Department, et al.

Defendants.
--------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE
## FIRST AMENDED COMPLAINT

GAINES, NOVICK, PONZINI, COSSU & VENDITTI, LLP
11 Martine Avenue, 8th Floor
White Plains, NY  10606
914-288-9595

Of Counsel
        Denise M. Cossu  (DC6900)
        John M. Murtagh  (JM5815)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………..iii

PRELIMINARY STATEMENT…………………………………………………...........................1

THE ORIGINAL COMPLAINT AND THE FAC………………………………………………….3

APPLICABLE STANDARD………………………………………………………………  11

ARGUMENT…………………………………………………………………………………..11

    POINT I

    PLAINTIFF'S CLAIM AGAINST WCC AND THE INDIVIDUAL DEFENDANTS
    SUED IN THEIR OFFICIAL CAPACITIES MUST BE DISMISSED PURSUANT
    TO THE ELEVENTH AMENDMENT …………………………………………………11

    POINT II

    PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIMS MUST BE
    DISMISSED……………………………………………………………………………..12

    POINT III

    PLAINTIFF'S DUE PROCESS CLAIMS BASED UPON ALLEGED VAGUENESS,
    ARBITRARY AND DISCRIMINATORY ENFORCEMENT, AND OVERBREADTH
    MUST FAIL……………………………………………………………………………..12

    POINT IV

    PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS MUST
    FAIL AS THEY ARE COVERED BY THE DOCTRINE OF QUALIFIED
    IMMUNITY……………………………………………………………………………..12

    POINT V

    THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
    JURISDICTION OVER PLAINTIFF'S ADDITIONAL STATE LAW
    CLAIM AGAINST WCC………………………………………………………….....13

    POINT VI

    IN THE ALTERNATIVE, PLAINTIFF HAS FAILED TO STATE A CLAIM WITH
    RESPECT TO HER PURPORTED STATE LAW CAUSE OF ACTION AGAINST

WCC FOR BREACH OF CBA.............................................................................14

    A.    Plaintiff Lacks Standing To Enforce The Terms Of The CBA Against
WCC ........................................................................................................14

          1.    Plaintiff's Claims Against WCCFT Are Time-Barred.......................14

          2.    Plaintiff Has Failed To Plausibly Plead A Breach Of The Duty Of
Fair Representation Against WCC...........................................16

    B.    Plaintiff Has Failed To Plausibly Plead A Breach Of The CBA
Against WCC.............................................................................18

CONCLUSION ............................................................................................21

**TABLE OF AUTHORITIES**

**Cases**                                                    **Page Numbers**

*Acosta v. Potter, Matter of Albala v County of Nassau*, 270 A.D.2d 482 N.Y.S.2d 615 (2nd Dept. 2000) .................................................................................................................. 14

*Ahrens v. New York State Pub. Empls. Fedn., AFL-CIO, 203 A.D.2d 796 N.Y.S.2d 680* (3d Dept. 1994) .................................................................................................................. 16

*Albino v. City of New York*, 80 AD2d 261 438 N.Y.S.2d 587 (1981) ........................................... 17

*Aloi v Board of Educ. of W. Babylon Union Free School Dist.*, 81 A.D.2d 874, 439 N.Y.S.2d 169 (2nd Dept. 1981); .............................................................................................. 14

*Altimari v. Parker*, 189 A.D.2d 982, 983-984, 592 N.Y.S.2d 509 (3rd Dept. 1993) .................. 16

*Anderson v. Janson Supermarkets*, 32 Misc. 3 1218(A), 934 N.Y.S.2d 32 (Suffolk Co. 2011) .. 18

*Berlyn v. Board of Educ. of E. Meadow Union Free School Dist.*, 80 A.D.2d 572, 435 N.Y.S.2d 793 (2nd Dept. 1981) ............................................................................................. 14, 19

*Blumberg v. Patchogue-Medford Union Free Sch. Dist.,* 18 A.D.3d 486, 795 N.Y.S.2d 81 (2nd Dept. 2005) ................................................................................................................ 15

*Board of Education v. Ambach*, 70 N.Y.2d 501 (1987)............................................................... 18

*Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343 & n.7 (1988) ...................................................... 13

*Civil Service Employees Association, Inc. v. Public Employment Relations Board,* 132 A.D.2d 430 N.Y.S.2d 709 (3d Dept. 1987), aff'd 73 N.Y.2d 76 (1988)............................................... 16

*Cruz v. United Federation of Teachers*, 2011 N.Y. Misc. LEXIS 6397 (New York Co. 2012) .. 17

*Hickey v. Hempstead Union Free School District,* 36 A.D.3d 760 (2nd Dept. 2007)................. 14

*Hoerger v. Board of Educ. of Great Neck Union Free School Dist.*, 215 A.D.2d 728 N.Y.S.2d 731 (2nd Dept. 1995) ............................................................................................... 16

*Kleinmann v. Bach*, 195 A.D.2d 736 N.Y.S.2d 327 (3rd Dept. 1993) ........................................ 17

*Leary v. Civil Serv. Emples. Ass'n*, 2012 U.S. Dist. LEXIS 65164 (S.D.N.Y. 2012)................... 14

*Lundgren v. Kaufman Astoria Studios,* 261 A.D.2d 513, 690 N.Y.S.2d 609 (1999)................... 14

*Matter of Board of Educ., Commack Union Free School Dist. v. Ambach*, 70 N.Y.2d 501 (1987) .................................................................................................................. 17

*Matter of Garvin v. New York State Pub. Empl. Relations Bd.*, 168 A.D.2d 446, 562 N.Y.S.2s 565 (2nd Dept. 1990 ................................................................................................... 14

*Matter of Incorporated Vil. of Lynbrook v. New York State Public Employment Relations Bd.,* 48 N.Y.2d 398, 404-405 (1979)................................................................................... 17

*Matter of Sapadin v. Board of Educ. of City of NY*, 246 A.D.2d 359 N.Y.S.2d 421 (1st Dept. 1998) .................................................................................................................. 16

*Oparji v. United Federation of Teachers,* 418 F. Supp. 2d 139 (E.D.N.Y. 2005) ...................... 16

*Ponticello v. County of Suffolk*, 225 A.D.2d 751 N.Y.S.2d 169 (2nd Dept. 1996) ...................... 16

*Roman v. City Employees Union Local 237*, 300 A.D.2d 142 (1st Dept. 2002) .......................... 15

*Rosenkrantz v. Bd. Of Ed. of the City School District of the City of New York*, 2009 N.Y. Misc. LEXIS 5267 (NY Co. 2009) ........................................................................................ 18

*Sampson v. District Council of New York City*, 2012 U.S. Dist. LEXIS 141822 (S.D.N.Y. 2012) ........................................................................................................................ 13

*Schmitt v Hicksville UFSD No. 17*, 200 A.D.2d 661, 662-663 N.Y.S.2d 761 (2nd Dept. 1994) . 16

*Smith v. Sipe*, 109 A.D.2d 1034, 1037, 487 N.Y.S.2d 153 (3rd Dept. 1985) ............................... 16

*Spano v. Kings Park Central School District*, 61 A.D.3d 666, 877 N.Y.S.2d 163 (2nd Dept. 2009) ............................................................................................................................... 18

*Straker v. Metro. Transit Auth.*, 2008 U.S. Dist. LEXIS 23130 (E.D.N.Y. 2008) aff'd, 340 Fed. Appx. 675 (2nd Cir. 2009) ...................................................................................... 13

*Symanski v East Rampo Cent. School Dist.*, 117 A.D.2d 18, 502 N.Y.S.2d 209 (2nd Dept.1986) ........................................................................................................................ 17

*Teamsters Local v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S. Ct 571 (1963) ............................. 19

*Trang v. DC-37, Local 1549, A.F.S.C.M.E., AFL-CIO*, 2000 U.S. Dist. LEXIS 5037 (S.D.N.Y. 2000) ................................................................................................................. 13

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ....................................................... 13

*Vaca v. Sipes*, 386 U.S. 171, 87 S. Ct 903 (1967) ....................................................................... 19

*Weisel v. City of New York*, 24 Misc. 3d 1224(A) (Kings Co. 2009). ........................................... 17

*Williams v. N.Y. City Hous. Auth. Teamsters Local 237*, 458 F.3d 67 (2d Cir. 2006) ................ 15

*Yoonessi v. State of New York*, 289 A.D.2d 998, 735 N.Y.S.2d 900 (4th Dept. 2001) ............... 18

**Statutes**

28 U.S.C. § 1367(c); ...................................................................................................................... 13

42 U.S.C. §1983 ...................................................................................................................... 11-12

C.P.L.R. § 217(2)(a) ....................................................................................................................... 14

Fed. R. Civ. Pro. 12(b)(1) and 12 (b)(6) ........................................................................................ 11

N.Y. Civ. Serv. Law § 209-a(2)(c) ........................................................................................ 1, 13-14

## PRELIMINARY STATEMENT

The defendants Westchester Community College ("WCC"), Joseph Hankin, Chet Rogalski, Jianping Wang, and Gabrielle Miller ("Individual Defendants") respectfully submit this memorandum in support of their motion to dismiss the First Amended Complaint filed March 6, 2013 ("FAC"). The FAC purports to add the Westchester Community College Federation of Teachers Local # 2431 ("WCCFT") as an additional defendant and amend the original Complaint dated May 11, 2012 to allege two additional state law causes of action: a breach of duty of fair representation against WCCFT pursuant to N.Y. Civ. Serv. Law § 209-a(2)(c) and breach of contract claim against WCC. [1]

Previously, WCC and the Individual Defendants had filed a motion to dismiss the original Complaint pursuant to Rules 12 (b)(1) and 12 (b)(6) of the Federal Rules of Civil Procedure ("Dismissal Motion I").[2] Dismissal Motion I, which was fully submitted pursuant to the Court's "bundling" rules on January 8, 2013, contended that Plaintiff's claims against WCC and the Individual Defendants sued in their official capacities are barred pursuant to the Eleventh Amendment. In addition, WCC and the Individual Defendants argued that Plaintiff's alleged speech was not entitled to constitutional protection and that her due process claims based upon

---

[1] Insofar as this Motion fully incorporates Dismissal Motion I, which included the Declaration of John M. Murtagh, Esq. dated October 26, 2012 ("Murtagh Decl") and Exhibits numbered 1 through 31, the numbering of the additional Exhibits submitted with respect to this motion shall continue seriatim and commence with Exhibit 32. Thus, a true and correct copy of the original complaint is attached to the Murtagh Decl. as Exhibit 1 and a true and correct copy of the FAC is attached to the Declaration of Denise M. Cossu, Esq. dated May 3, 2013 submitted herewith ("Cossu Decl.") as Exhibit "32.".

[2] The entire Dismissal Motion, including Plaintiff's Opposition, is reflected on the Docket Sheet at the following Docket Numbers: **25** (FIRST MOTION to Dismiss), **26** (DECLARATION of John M. Murtagh in Support and Exhibits "1 through 31, attached); **27** (MEMORANDUM OF LAW in Support re **25** FIRST MOTION to Dismiss), **28** (REPLY MEMORANDUM OF LAW in Support re **25** FIRST MOTION to Dismiss); **29** (MEMORANDUM OF LAW in Opposition) and **30** (AFFIDAVIT of Curtis B Leitner and Exhibits "1" through "18," attached). A copy of the Docket Sheet is attached to the Cossu Declaration as Exhibit "33."

vagueness, arbitrary and discriminatory enforcement and overbreadth must also fail. The Individual Defendants also argued that they are entitled to dismissal on the grounds of qualified immunity.

By letter dated January 29, 2013, while Dismissal Motion I was *sub judice,* Plaintiff's counsel sought leave to amend the original Complaint and asserted that "because the factual allegations supporting Professor Leitner's additional claims do not relate to the issues raised by the defendants' motion to dismiss, Professor Leitner's proposed amended complaint will not affect the disposition of that motion."[3] As per the individual rules of practice of this Court, by letter dated February 19, 2013, counsel for WCC and the Individual Defendants responded to Plaintiff's January 29, 2013 letter.[4]   A pre-motion conference held on February 26, 2013, resulted in the Court granting Plaintiff leave to amend as requested and a briefing schedule to accommodate a proposed dismissal motion with respect to the amendments in light of the already pending motion.[5]  Thus, the Court stated:

> … What I would propose to do is set a schedule for the filing of the amended complaint. I'll deny the pending motions without prejudice to renewal and then it will be up to the defendants who can either tell me you want to submit a whole new motion or if you only want to move against the new part of the complaint and you want to rely on your previously filed papers as to the old part you can do that. If you think there are changes between the old part and the new part such that you want to resubmit the whole thing, that's fine. … If it turns out that everything you said in the first motion remains viable and you just want me to rely on your previous set of motion papers supplemented by which ever motion you want to make against the new claims, I'll do that. Or if you want to make a whole new motion that's fine with me too.

*   *   *

---

[3] A true and correct copy of the January 29, 2013 letter is attached to the Cossu Decl. as Exhibit 34.

[4] A true and correct copy of the February 19, 2013 letter is attached to the Cossu Decl. as Exhibit 35.

[5] A true and correct copy of the transcript of the pre-motion conference is attached to the Cossu Decl. as Exhibit 36.

What you can do is you can do it in your notice of motion, in your brief, and just say we hereby incorporate the motion we previously made.[6]

In accordance with the Court's suggestion, WCC and the Individual Defendants hereby incorporate Dismissal Motion I in its entirety. In those instances where the FAC differs from the original Complaint, such differences to the extent that they are relevant to this motion, shall be brought to the Court's attention.

As will be discussed below, dismissal of the purported new claim against WCC, set forth in Count Ten of the FAC and alleging a breach of the WCC-WCCFT Collective Bargaining Agreement ("CBA") is likewise warranted. In the first place, this Court should decline to exercise supplemental jurisdiction over these state law claims because, as fully set forth in Dismissal Motion I, WCC is entitled to dismissal of those claims over which this Court has original jurisdiction. In addition, Plaintiff lacks standing to enforce the terms of the CBA against WCC as she must first establish the union's breach of the duty of fair representation.  She is unable to do so here insofar as Plaintiff's claim against WCCFT (Count Nine) is not only time-barred, but also fails on its merits. Moreover, even if Plaintiff were able to withstand dismissal of her claims against WCCFT, she has failed to plausibly plead a breach of the CBA as against WCC.

## THE ORIGINAL COMPLAINT AND THE FAC

As discussed in Dismissal Motion I, the gravamen of the original Complaint and the continuing basis for the claim to this Court's jurisdiction is the contention that WCC and the Individual Defendants improperly retaliated against Plaintiff "by firing her for the content of her in-class speech" as the "culmination of a pattern of infringement of her First and Fourteenth

---

[6] Cossu Decl., Exhibit 36, Transcript of Pre-Motion conference at p. 10, lines 8-22 and p. 12, lines 23-25.

Amendment rights" (Compl. and FAC at ¶4). Plaintiff further contends that this was accomplished by the enforcement of an allegedly unconstitutionally vague and overbroad "Students Rights and Responsibilities" portion of the WCC Student Handbook (Compl. and FAC at ¶4).[7] She also alleges that in so doing, WCC and the Individual Defendants violated WCC's own internal disciplinary procedures, as codified in a memorandum dated and adopted in 1983 ("1983 Memorandum") (Compl. and FAC at ¶22).[8] WCC and the Individual Defendants hereby incorporate all of the arguments made in support of Dismissal Motion I in connection with this application.

The FAC asserts additional state law claims, seeking to invoke this Court's supplemental jurisdiction based upon the claim that WCCFT "acceded to and facilitated the illegal conduct of WCC and the Individual Defendants" and "misled [Plaintiff] into thinking that it was fighting for her job – when all the while [WCCFT's president] was helping WCC administrators pursue disciplinary charges against [her], and assuring the administration that the WCCFT would provide [Plaintiff] with only a token defense." (FAC at ¶9).

Plaintiff alleges censorship of her in-class speech, claiming in the Complaint and FAC that "in or about 2004, Dr. Eileen Shea, then the Chairperson of the Department, "requested a step one meeting to discipline Professor Leitner" (Complaint at ¶ 33 and FAC at ¶34).[9] Such

---

[7] A true and correct copy of "Students Rights and Responsibilities" portion of the Westchester Community College Student Handbook is attached to the Murtagh Decl. as Exhibit "5."

[8] A true and correct copy of the 1983 Memorandum is attached to the Murtagh Decl. as Exhibit "6."

[9] It is telling that Plaintiff has used this Court's permission to file an amended complaint not only to assert the additional state law claims, but also to re-write her admission that she told a student that, because of the size of his lips, his pronunciation of bilabial sounds (*i.e.,* sounds produced using both lips) would be improved if he pressed his lips together more tightly," and delete that allegation. (*Compare,* Compl. at ¶33), with FAC at ¶ 34). This incident gave rise to a written student complaint, one that arose repeatedly, that Plaintiff taught in a racially biased manner, making statements such as: (1) "Blacks belong to subgroups, and if they want to flourish and mingle in society later in life, they must come out of these subgroups and have a desire to speak like White people;" (2) "If you have bold features, i.e. 'big lips,' you're unable to enunciate properly and correctly; and that (3) A question asked on the last

4

meeting was requested by letter dated September 17, 2004, which indicated Dr. Shea's frustration and inability to resolve student complaints informally with Plaintiff.[10] The step one meeting was held on December 1, 2004, at which Anne D'Orazio and Richard Rosell, the President and Vice President of WCCFT, respectively, were present and a step one letter dated December 3, 2004 was delivered to Plaintiff.[11]

The FAC also re-alleges a later "effort" in 2007 to improperly "censor" Plaintiff's in-class speech and "punish" her because of a complaint arising out of her criticism of a student performing a mock job interview as contained in a letter to Dr. Shea dated February 6, 2007. Thus, the allegations in the FAC at ¶¶ 35 through 42 are the same as ¶¶ 34 through 41 of the original Complaint. A discussion of this particular student complaint, Dr. Shea's many attempts to address recurrent student complaints with Plaintiff without success, and the resultant step two hearing are fully discussed in Dismissal Motion I, in particular the Memorandum of Law submitted in Support (Docket #27) (referred to herein as "Memo I") at pp. 3-6 and will not be repeated here.

Suffice it to say that at the step two hearing held on May 31 and July 26, 2007, Plaintiff was again represented by her union representatives, D'Orazio and Rosell and that a step two letter dated September 6, 2007 was prepared, setting forth Dr. Shea's concerns and the hearing officer's conclusions that the Plaintiff's "belittling, humiliating and insulting remarks" towards

---

day of class was, "How do you feel when you hear Black people speak White?" A true and correct copy of that student complaint is attached to the Murtagh Decl. as Exhibit 8.

[10] In a further attempt to re-cast her claims, Plaintiff inserts an allegation not contained in the original Complaint, that her discussions with Dr. Shea and the resultant request for a progressive disciplinary hearing concerned her self-described "refusal to lower her academic standards." (FAC ¶ 34). However, this statement is supported by nothing more than Plaintiff's conclusory opinion. By contrast, the letter, itself, indicates that the hearing was requested "to discuss recurring issues that need to be resolved with regard to student complaints." A true and correct copy of the September 17, 2004 letter is attached to the Murtagh Decl. as Exhibit 9.

[11] A true and correct copy of the step one letter is attached to the Murtagh Decl. as Exhibit "11."

her students was a "professional problem" that WCC would not tolerate.[12] Plaintiff provided a written rebuttal to the step two letter and the union representative also filed a response. However, there is no allegation that either the union or Plaintiff requested or filed a grievance with respect to the step two letter, although the CBA clearly provides for such a procedure.[13]

The FAC also refers to an incident alleged to have occurred on November 15, 2010, regarding the presentation of a poem in Plaintiff's class by a Mexican student; Plaintiff's hurtful and derogatory in-class comments regarding Mexicans; and a parent's complaint arising out of those comments (*Compare* Compl. at ¶¶ 42-52 with FAC at ¶¶ 43-53 which are identical). This parent complaint triggered a meeting between Plaintiff and Gabrielle Miller, Acting Chair of Communication, Journalism and Performing Arts and resulted in Professor Miller bringing the matter to the attention of Dean Wang (*Compare* Compl. at ¶¶ 53-54 with FAC ¶ 54). Again, these allegations and underlying documents are also fully discussed in Memo I at pp. 6-8 and reflected in the Murtagh Decl. at Exhibits 20-22. The Court is respectfully referred to such discussion and Exhibits, which will not be repeated here.

At this point of the amended pleading, however, the allegations markedly differ from the original Complaint. For example, in order to bolster the newly pleaded state law claims, the FAC deletes ¶54 of the original Complaint and inserts an allegation that "shortly after meeting with Professor Miller, [Plaintiff] met with [her union representatives] regarding "the administration's response" to the parent complaint (FAC at ¶ 55) and that "around the same time" Professor

---

[12] A true and correct copy of the step two letter is attached to the Murtagh Decl. as Exhibit "17." The FAC, like the original Complaint also alleges a student complaint about a low grade and a student's claim that Plaintiff had missed a class because of Botox injections, when Plaintiff claims that she had actually had a stroke (*Compare* Compl. at ¶¶ 35 and 36 with FAC at ¶¶36 and 37). However, as discussed in Dismissal Motion I, neither of these alleged complaints involves First Amendment considerations, nor are they referred to in the step two letter as a basis for the disciplinary hearing.

[13] True and correct copies of the rebuttal letter and union response are attached to the Murtagh Decl. as Exhibits 18 and 19, respectively; *see also*, Murtagh Decl. at Exhibit 7, Collective Bargaining Agreement at ¶7.6.

Miller allegedly wrote a "draft memorandum" to Plaintiff advising that she intended to bring the parent complaint to Dean Wang's attention because she found [Plaintiff's] conduct to be "disturbing" (FAC at ¶¶ 55 and 56).

The FAC further alleges that Plaintiff did not actually receive the purported "draft memorandum," hearing nothing further for the next three months, but that on February 18, 2011, "unbeknownst" to Plaintiff and "upon information and belief," D'Orazio somehow colluded with Professor Miller and Dean Wang in bringing disciplinary charges against her (FAC at ¶¶ 57-58). The apparent "information" this purported "belief" is predicated upon are the contentions that on February 21, 2011, Professor Miller provided D'Orazio with a draft of the letter that she intended to send to Plaintiff for her review (FAC at ¶59); that Plaintiff received a "disciplinary letter" date-stamped February 23, 2011 (FAC at ¶60); and that the "disciplinary letter" contained a purportedly "new" paragraph referencing the "disturbing" nature of the parent complaint (*Id.*).[14] Plaintiff then insinuates, based upon the "timing" of this purported "revision," and D'Orazio's "review" of and "upon information and belief, suggestions concerning, the disciplinary letter," that D' Orazio actually helped Professor Miller write the letter which resulted in the step three hearing (*Id.* and FAC at ¶61.)

However, nothing before the Court, or the emails upon which Plaintiff predicated the request for leave to amend the Complaint, supports Plaintiff's blatant speculation. In fact, the emails simply show that Professor Miller asked D'Orazio to review the already written letter and that D'Orazio was planning Plaintiff's defense by requesting "a list of people that [Dean Wang]

---

[14] A true and correct copy of the February 23, 2011 Letter is attached to the Murtagh Decl. as Exhibit 22. Not surprisingly, the FAC selectively quotes the February 23, 2011 letter and fails to acknowledge Plaintiff's response to the meeting, as reflected in that letter, that when Professor Miller "brought up [the parent's complaint about her saying] negative, hurtful things about Mexican immigrants [Plaintiff] blamed the student for the incident claiming the poem was an "inciting" poem and sparked what happened."

met with in the course of the investigation" of the student complaints.[15] In fact, the February 23, 2011 letter, itself, in a paragraph conveniently ignored in the FAC and *not alleged* to be inserted at the behest of D'Orazio, states Professor Miller's *actual* reason for bringing the parent complaint to Dean Wang's attention, as follows:

> Carol, I told you at our meeting that since these complaints are of a serious and similar nature to those addressed in past meetings between you and the former department chair [Dr. Eileen Shea], I felt I had no choice but to bring this matter to the attention of Dean Wang, and I have done so.[16]

The FAC also inserts the allegations that on March 24, 2011, D'Orazio had a conversation with Dean Wang, informing her of a confidential conversation that she had with Plaintiff and expressing the opinion that Plaintiff had "engaged in misconduct," assuring her that WCCFT "was not going to provide a good faith defense to [Plaintiff]," and that WCCFT would "represent [Plaintiff] only to 'protect the union' because '[Plaintiff] may turn against us" (FAC at ¶66). The apparent basis for this allegation is the alleged typewritten transcription of Dr. Wang's recollection of the purported conversation, which states as follows:

> On March 2, 2011, I saw Anne D'Orazio at the Women Faculty Tea gathering in the Pub. Anne and I talked about a number of issues including the issues regarding [Plaintiff]. Anne stated that she understands the issue that we have with [Plaintiff] and said off the record: "I know she has issues in the classroom. Last time when we were sitting down with her, she brought some materials that were damning to herself. That is her materials." She said "I want you to understand that we are not defending her, we are defending the process." She also said: "We may have to grieve to protect the Union, because Carol may turn against us." She believes that the delay may be the problem. I explained that [Professor] Miller did meet with [Plaintiff] in November last year right after [Professor Miller] received students' written complaints. To that, Anne said: "Oh, I did not know that. Then

---

[15] The February emails are attached to the January 29, 2011 contained in Cossu Decl. at Exhibit 34 and separately to the Cossu Declaration as Exhibit "37."

[16] *See,* Murtagh Decl. at Exhibit 22, February 23, 2011 Letter. The further claim at ¶56 of the FAC that the "real reason for punishing [Plaintiff] was that she expressed a political opinion that offended a student, her parent, the WCC administration, and apparently Professor D'Orazio" is predicated not upon a factual basis, but again constitutes mere conjecture and speculation.

we might be okay, but we may still have to grieve. After Step II hearing, we will see then."[17]

Notably, the transcription refers to a "Step II" hearing which had actually occurred four years prior and for which a step two letter had already been prepared (Murtagh Decl. at Exhibit 17). Obviously the transcription was incorrect and Dean Wang had actually requested a step three hearing by letter dated March 21, 2011 (Compl. at ¶59 and FAC at ¶69) and re-submitted her request by letter dated May 26, 2011 ("May 26, 2011 Request"), setting forth additional complaints received since the date of the earlier Request.[18] Again, these allegations in the FAC are also alleged in the original Complaint (*compare* FAC at ¶¶ 70 – 76 with Compl. at ¶¶ 60-66) and fully discussed in Memo I at pp. 8-10 and reflected in the Murtagh Decl. at Exhibits 23-28. That discussion is incorporated herein and the Court is respectfully referred to such discussion and Exhibits, as such will not be repeated here.

Remarkably, the FAC, like the original complaint before it, says nothing about an April 19, 2011 incident wherein Plaintiff threatened a student who had lodged a complaint against her, and refused to allow her leave a building unless that student signed a letter retracting that complaint against Plaintiff. This incident resulted in the preparation of an internal Incident Report as well as a Police Report. A few days later, on April 21, 2011, Plaintiff was suspended for the remainder of the Spring 2011 semester and by letter dated May 12, 2011, Plaintiff, a non-tenured part time adjunct teacher, was removed from the priority list of the Communications, Journalism, and Performing Arts Department, effective May 23, 2011. As a result, when the step three hearing occurred on June 9, 2011 (Compl. at ¶ 66 and FAC at ¶ 76), Plaintiff was no longer

---

[17] The typewritten transcription is attached to the January 29, 2011 letter contained in Cossu Decl. at Exhibit 34, and separately to the Cossu Declaration as Exhibit 38.
[18] A true and correct copy of the May 26, 2011 Request, including the earlier March 21, 2011 Request is attached to the Murtagh Decl. as Exhibit 23.

working at WCC and having been removed from the priority list, was not guaranteed any further or future employment by WCC. There is no allegation that Plaintiff even attempted to file a complaint, grievance or arbitration request relative to this action taken by WCC, nor that any such action would have been futile. *See,* Memo I at pp. 8-9 and Murtagh Decl. at Exhibits 24 - 27.

The allegations regarding the step three hearing, the report dated June 14, 2011 prepared by Chet Rogalski, Vice President and Dean of Academic Affairs, and the Plaintiff's dismissal are substantially the same in the FAC as the original Complaint (*compare* FAC at ¶¶ 76-79 with Compl. at ¶¶ 66-67), are discussed at length in Memo I at pp. 10-11 and reflected in the Murtagh Decl. at Exhibits 29-30. That discussion is incorporated herein and the Court is respectfully referred to such discussion and Exhibits. However, Plaintiff inserts an additional allegation in the FAC that WCCFT "made no argument concerning [Plaintiff's] right to academic freedom," and that "upon information and belief, WCCFT's intentional failure to fully defend [Plaintiff] – which was memorialized by Dean Wang – influenced Dean Rogalski's decision" (FAC at ¶¶ 78 and 79). These allegations are belied by Dean Rogalski's Report which indicates that D'Orazio, on behalf of WCCFT argued, that Plaintiff "[was] entitled to [her] own style of teaching, the right to set standards and methods of evaluating students, and the ability to present and, if necessary, revise the course syllabus."[19]

In addition, Dean Rogalski's Report clearly explains the reasons for his decision, such as Plaintiff's "disparaging remarks about students" and the "large number of claims over the years" about how she humiliated them. He also did not agree with the WCCFT that Plaintiff's

---

[19] A true and correct copy of Anne D'Orazio's handout, referenced in the Rogalski Report (Murtagh Decl. at Exhibit 29) is attached to the Cossu Decl. as Exhibit 39.

humiliating and belittling behavior toward students is a "pedagogical style." Plaintiff had been warned in the past that she was to "treat every student with courtesy and respect." However, she chose not to adhere to that request.[20]

## APPLICABLE STANDARD

WCC and the Individual Defendants fully incorporate the standards set forth in Memo I at pp. 11 - 12 relative to the determination of a dismissal motion brought pursuant to the Fed. R. Civ. Pro. 12(b)(1) and 12 (b)(6). Those standards continue to be applicable to Plaintiff's additional purported factual allegations, based upon nothing but speculation, requiring dismissal of the FAC.

## ARGUMENT

### POINT I

**PLAINTIFF'S CLAIMS AGAINST WCC AND THE INDIVIDUAL DEFENDANTS SUED IN THEIR OFFICIAL CAPACITIES MUST BE DISMISSED PURSUANT TO THE ELEVENTH AMENDMENT**

WCC and the Individual Defendants fully incorporate Point I of Memo I and Point I of the Reply Memorandum of Law (Docket #28) (hereinafter referred to as "Reply Memo I"), and refer the Court to pp. 13-20 of Memo I and pp. 3-5 of Reply Memo I in support if their position that Plaintiff's federal claims brought pursuant to 42 U.S.C. §1983 are barred pursuant to the Eleventh Amendment.

---

[20] A true and correct copy of Dean Rogalski's report is attached to the Murtagh Decl. as Exhibit 29.

## POINT II

### PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIMS MUST BE DISMISSED

WCC and the Individual Defendants fully incorporate Point II of Memo I and Point II of Reply Memo I in support of their position that Plaintiff's First retaliation claims brought under the First Amendment pursuant to 42 U.S.C. §1983, and the New York State Constitution must also be dismissed.

## POINT III

### PLAINTIFF'S DUE PROCESS CLAIMS BASED UPON ALLEGED VAGUENESS, ARBITRARY AND DISCRIMINATORY ENFORCEMENT, AND OVERBREADTH MUST FAIL

WCC and the Individual Defendants fully incorporate Point III of Memo I and Point III of Reply Memo I in support of their position that Plaintiff's Due Process claims based upon alleged vagueness, arbitrary and discriminatory enforcement, and overbreadth must also be dismissed.

## POINT IV

### PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS MUST FAIL AS THEY ARE COVERED BY THE DOCTRINE OF QUALIFIED IMMUNITY.

WCC and the Individual Defendants fully incorporate Point IV of Memo I and Point IV of Reply Memo I in support of their position that Plaintiff's claims alleged against the Individual Defendants must fail as they are covered by the doctrine of qualified immunity.

## POINT V

### THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S ADDITIONAL STATE LAW CLAIM AGAINST WCC

As discussed at length in Memo I and Reply Memo I, all of Plaintiff's federal claims, over which the Court had original jurisdiction should be dismissed as against WCC, leaving only the derivative state law claim against WCC for the alleged breach of the CBA under N.Y. Civ. Serv. Law §209-(a)(2)(c).  The Court should decline to exercise supplemental jurisdiction over these state law claims.  28 U.S.C. § 1367(c); *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 & n.7 (1988); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (if federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well); *Straker v. Metro. Transit Auth.*, 2008 U.S. Dist. LEXIS 23130 (E.D.N.Y. 2008) aff'd, 340 Fed. Appx. 675 (2nd Cir. 2009) (affirming district court declining to exercise supplemental jurisdiction over plaintiff's state law breach of duty of fair representation claim); *Sampson v. District Council of New York City,* 2012 U.S. Dist. LEXIS 141822 (S.D.N.Y. 2012) (where federal claims are dismissed as without merit, state law claims should be dismissed as well); *see also, Trang v. DC-37, Local 1549, A.F.S.C.M.E., AFL-CIO,* 2000 U.S. Dist. LEXIS 5037 (S.D.N.Y. 2000) (where a district court dismisses all claims over which it has original jurisdiction, the court may decline to exercise its supplemental jurisdiction).

In this case, since all of the federal claims against WCC should be dismissed, this Court should also decline to exercise supplemental jurisdiction over his purported state law claims and dismiss them entirely.

13

## POINT VI

## IN THE ALTERNATIVE, PLAINTIFF HAS FAILED TO STATE A CLAIM WITH RESPECT TO HER PURPORTED STATE LAW CAUSE OF ACTION AGAINST WCC FOR BREACH OF THE CBA

### A.  Plaintiff Lacks Standing To Enforce The Terms Of The CBA Against WCC

A union member generally has no individual rights under a collective bargaining agreement which he or she can enforce against an employer. *Hickey v. Hempstead Union Free School District,* 36 A.D.3d 760 (2nd Dept. 2007); *Acosta v. Potter, Matter of Albala v County of Nassau*, 270 A.D.2d 482, 483, 705 N.Y.S.2d 615 (2nd Dept. 2000); *Aloi v Board of Educ. of W. Babylon Union Free School Dist.,* 81 A.D.2d 874, 875, 439 N.Y.S.2d 169 (2nd Dept. 1981); *Berlyn v Board of Educ. of E. Meadow Union Free School Dist.,* 80 A.D.2d 572, 573, 435 N.Y.S.2d 793 (2nd Dept. 1981). In this case, Plaintiff's purported claim against WCC may only proceed when the union fails in its duty of fair representation. *Matter of Board of Educ., Commack Union Free School Dist. v Ambach*, 70 N.Y.2d 501, 508 (1987); *Lundgren v Kaufman Astoria Studios*, 261 A.D.2d 513, 514, 690 N.Y.S.2d 609 (1999)   As set forth in the Memorandum of Law submitted by WCCFT, and below, Plaintiff has failed to adequately state a claim for any such breach of WCCFT's duty.

### 1.  Plaintiff's Claims Against WCCFT Are Time-Barred

Plaintiff's proposed new claims against WCCFT under N.Y. Civ. Serv. Law § 209-a are subject to that law's four-month statute of limitations. C.P.L.R. § 217(2)(a)[21]; see, e.g. *Leary v. Civil Serv. Emples. Ass'n*, 2012 U.S. Dist. LEXIS 65164 (S.D.N.Y. 2012); *Williams v. N.Y. City*

---

[21]CPLR § 217 (a) provides, in relevant part that:

> Any action or proceeding against an employee organization ... which complains that such employee organization has breached its duty of fair representation ... shall be commenced within four months of the date the employee or former employee knew or should have known that the breach has occurred, or within four months of the date the employee or former employee suffers actual harm, whichever is later.

14

*Hous. Auth. Teamsters Local 237,* 458 F.3d 67 (2d Cir. 2006); *Roman v. City Employees Union Local 237,* 300 A.D.2d 142 (1st Dept. 2002); *Blumberg v. Patchogue-Medford Union Free Sch. Dist.,* 18 A.D.3d 486, 795 N.Y.S.2d 81 (2nd Dept. 2005).

In this case, the FAC appears to be predicated upon off-the-record communications had between members of the WCC administration and the WCCFT representative, Anne D'Orazio, in February and early March 2011, prior to the initiation of the step three disciplinary proceeding, which resulted in Plaintiff's termination from her employment.  If the date of accrual is the date of those communications, then it is obvious that the four month limitation period has long since expired. If the Plaintiff wishes to use the later date that she suffered actual harm from those communications as the accrual date, then that date would be the date of her termination, July 6, 2011; however, the four month limitation period has expired with respect to that date, as well.

Plaintiff's apparent argument that she should be permitted to choose as an accrual date, the date of her counsel's document review, is unavailing. In fact, notwithstanding the allegedly improper conduct on the part of D'Orazio, WCCFT had fulfilled its obligation to represent Plaintiff during the step three hearing and there is no allegation that WCCFT refused to file a grievance on Plaintiff's behalf or that any attempt by Plaintiff to do so on her own pursuant to the CBA would have been futile. The gloss that Plaintiff seeks to impose upon the rather innocuous communications between D'Orazio and members of the WCC administration (Cossu Decl. at Exhibits 37 and 38) are not supported by the documents, themselves, and do not serve to resurrect Plaintiff's time-barred claim.

### 2. Plaintiff Has Failed To Plausibly Plead A Breach Of The Duty Of Fair Representation Against WCCFT

In order to establish a breach of the duty of fair representation, it is necessary to show that the union's conduct was arbitrary, discriminatory, or taken in bad faith (see *Smith v. Sipe,* 109 A.D.2d 1034, 1037, 487 N.Y.S.2d 153 (3rd Dept. 1985)(Mahoney, P.J., dissenting op), rev'd on dissenting memo below, 67 N.Y.2d 928, 929 (1986); *Ponticello v County of Suffolk*, 225 A.D.2d 751, 752, 640 N.Y.S.2d 169 (2nd Dept. 1996); *Hoerger v. Board of Educ. of Great Neck Union Free School Dist.*, 215 A.D.2d 728, 729, 627 N.Y.S.2d 731 (2nd Dept. 1995); *Ahrens v New York State Pub. Empls. Fedn., AFL-CIO, 203 A.D.2d 796, 798, 610 N.Y.S.2d 680* (3d Dept. 1994); *Schmitt v Hicksville UFSD No. 17*, 200 A.D.2d 661, 662-663, 606 N.Y.S.2d 761 (2nd Dept. 1994); *Altimari v. Parker*, 189 A.D.2d 982, 983-984, 592 N.Y.S.2d 509 (3rd Dept. 1993). Mere negligence or mistake on the part of a union does not rise to the level of a breach of the duty of representation. *Ahrens v New York State Pub. Empls. Fedn., AFL-CIO, 203 A.D.2d 796, 798, 610 N.Y.S.2d 680* (3rd Dept. 1994). Conduct that is "irresponsible or grossly negligent" but lacks an improper motive does not constitute a breach of the duty of fair representation. Likewise, an "honest mistake resulting from misunderstanding or lack of familiarity with matters of procedure does not rise to the level of the requisite arbitrary, discriminatory or bad-faith conduct." *Oparji v. United Federation of Teachers,* 418 F. Supp. 2d 139 (E.D.N.Y. 2005), citing *Civil Service Employees Association, Inc. v. Public Employment Relations Board,* 132 A.D.2d 430, 432, 522 N.Y.S.2d 709 (3d Dept. 1987), aff'd 73 N.Y.2d 76 (1988).

Moreover, the mere refusal by a union to proceed with the grievance or to handle the grievance in a particular way does not itself establish a breach of the duty of fair representation (see *Matter of Sapadin v Board of Educ. of City of NY*, 246 A.D.2d 359, 359, 666 N.Y.S.2d 421 (1st Dept. 1998); *Symanski v East Rampo Cent. School Dist.*, 117 A.D.2d 18, 21, 502 N.Y.S.2d

209 (2nd Dept.1986); *Albino v City of New York*, 80 AD2d 261, 270, 438 N.Y.S.2d 587 (1981). Rather, "there must be a showing that the activity, or lack thereof, which formed the basis of the charges against the union was deliberately invidious, arbitrary or founded in bad faith" (*Matter of Civil Serv. Empls. Assn. v Public Empl. Relations Bd.*, supra; see also *Matter of Incorporated Vil. of Lynbrook v New York State Public Employment Relations Bd.*, 48 N.Y.2d 398, 404-405 (1979).

In this case, there is no showing whatsoever that D'Orazio's actions rose to the level necessary to state a claim based upon WCCFT's purported failure of the duty to represent Plaintiff.  In retrospect, Plaintiff may believe that the step three hearing may have been handled differently or that D'Orazio may have made additional arguments, but this is not enough to make out the claim. Indeed, WCCFT is under no duty to carry every grievance to the highest level or to pursue it to arbitration or to present it in a particular way, and, thus, the failure to do so does not, in itself, constitute a breach of its duty of fair representation. *Kleinmann v. Bach*, 195 A.D.2d 736, 738, 600 N.Y.S.2d 327 (3rd Dept. 1993); *Matter of Garvin v New York State Pub. Empl. Relations Bd.*, 168 A.D.2d 446, 447, 562 N.Y.S.2d 565 ( 2nd Dept. 1990), *Weisel v. City of New York,* 24 Misc. 3d 1224(A) (Kings Co. 2009).

In addition, Plaintiff has failed to make a showing that she was even damaged as a result of WCCFT's actions.  See generally, *Cruz v. United Federation of Teachers*, 2011 N.Y. Misc. LEXIS 6397 (New York Co. 2012). In fact, on April 21, 2011, months before the step three disciplinary hearing was held, Plaintiff was suspended with pay for the remainder of the spring 2011 semester pending an "investigation into [her] interactions with [her] former student." (Murtagh Decl. at Exhibit 26) and subsequently, by letter dated May 12, 2011, was removed from the priority list of the Communications, Journalism, and Performing Arts Department,

effective May 23, 2011 (Murtagh Decl. at Exhibit 27). Insofar as Plaintiff was a non-tenured part time adjunct teacher at all relevant times, when the step three hearing occurred, on June 9, 2011, Plaintiff was no longer working at WCC and having been removed from the priority list, was not guaranteed any further employment by WCC. Notably, no grievance or arbitration request was ever filed relative to this action taken by WCC and the time within which to do so has long since expired.

### B.  Plaintiff Has Failed To Plausibly Plead A Breach Of The CBA Against WCC

As a general proposition, when an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract. Unless the contract provides otherwise, only when the union fails in its duty of fair representation can the employee go beyond the agreed procedure and litigate a contract issue directly against the employer. *Board of Education v. Ambach*, 70 N.Y.2d 501 (1987); *Spano v. Kings Park Central School District*, 61 A.D.3d 666, 877 N.Y.S.2d 163 (2nd Dept. 2009); *Yoonessi v. State of New York*, 289 A.D.2d 998, 735 N.Y.S.2d 900 (4th Dept. 2001); *Anderson v. Janson Supermarkets*, 32 Misc. 3 1218(A), 934 N.Y.S.2d 32 Suffolk Co. 2011); *Rosenkrantz v. Bd. Of Ed. of the City School District of the City of New York*, 2009 N.Y. Misc. LEXIS 5267 (NY Co. 2009).

As noted in *Board of Education v. Ambach*, 70 N.Y.2d at 509:

Grievance procedures have been recognized as serving the interests of all parties involved in collective bargaining. They enable the union to participate in administering the contract it negotiated; they aid the employer by channeling grievances into one forum providing one set of remedies; and they permit efficient protection of employee rights (*Republic Steel v Maddox, 379 U.S. 650, 653*). … Allowing individual employees to circumvent the grievance procedure in favor of other remedies as a general matter would impair those interests, deprive the parties of the opportunity to "establish a uniform and exclusive method for

18

orderly settlement of employee grievances", and "'inevitably exert a disruptive
influence upon both the negotiation and administration of collective agreements.'"
(*Id., quoting Teamsters Local v Lucas Flour Co., 369 U.S. 95, 103.*) ... Only
when a union has failed to represent an employee fairly -- effectively depriving
the employee of full use of the agreed procedures -- does concern for employees'
rights require that they be allowed to pursue grievances beyond the contractual
mechanism (*Berlyn v Board of Educ., 55 NY2d 912, supra; Vaca v Sipes, 386 U.S.
171, supra*).

In this case, Plaintiff was subject to a CBA which clearly provided that "every faculty

member had the right to present his/her grievance to the College," and had the right to be

represented by an individual or the Union at all stages of the grievance procedure. (Murtagh

Decl. at Exhibit 7, Article 7.2)   In addition, a grievance, defined as any "claimed violation,

misrepresentation or inequitable application of [the CBA], or of the existing laws, rules,

procedures, regulations, administrative orders or work rules ... which relate to wages, hours, or

working conditions" (Murtagh Decl. at Exhibit 7, Article 7.3) was to be "filed [no] later than

sixty (60) days after the grievant could have reasonably known of the event constituting the

violation." (Murtagh Decl. at Exhibit 7, Article 7.4).

In this case, Plaintiff claims a violation of Article 3.13 of the CBA entitled "Academic

Freedom" (FAC at ¶ 148) and that WCC (i) took disciplinary action against Plaintiff based on

her discussion of her own subject in the classroom; (ii) restricted Plaintiff's speech by requiring

her to adhere to the "Students Rights and Responsibilities" portion of the WCC Student

Handbook (derisively and improperly referred to as a "Speech Code" by Plaintiff) and the step

two letter; and (iii) violated the procedures "required by the Áx decision (FAC at ¶ 149).

However, Plaintiff failed to comply with or even attempt to comply with the grievance

procedures of the CBA with respect to any one of these purported violations.

Plaintiff alleges that the WCCFT representative assisted WCC in bringing step three

disciplinary charges against her (FAC at ¶¶ 57-61) and advised WCC that WCCFT would not

19

provide Plaintiff with a good faith defense with respect to the step three hearing (FAC at ¶66). Notwithstanding the speculative nature of these allegations, which in and of themselves require dismissal of these newly pled state law claims, Plaintiff's breach of contract claim against WCC is also not viable to the extent that it is predicated upon the step two hearing and/or letter as it is solely dependent upon the allegation that WCCFT breached its duty of fair representation by failing to defend Plaintiff adequately at the step three disciplinary hearing, which has nothing whatsoever to do with the step two proceedings. Her claims regarding the step two hearing and step two letter dated September 6, 2007 are also untenable as she failed to allege that she even attempted to file a grievance with respect to those claims and the time to do so has long since expired.

The latest date for the accrual of any alleged violation of the CBA and the filing of a grievance would be her termination date, alleged to have occurred on July 6, 2011. Plaintiff would then have had sixty (60) days until September 4, 2011 to file a grievance, which she failed to do and such is now barred as untimely. She also fails to allege that she requested that WCCFT file such a grievance with respect to the step three disciplinary proceedings, but that it refused to do so, thereby violating its duty of fair representation. Insofar as Plaintiff has failed to exhaust her administrative remedies by the filing of a grievance with respect to either the step two or step three disciplinary proceedings, she may not now proceed directly against WCC.

Moreover, putting aside for the moment the question as to whether the alleged actions on the part of the WCCFT representative rise to the level of a breach of a duty of fair representation, those alleged actions are unrelated to Plaintiff's failure to commence a grievance proceeding regarding alleged breaches of that agreement as required by the CBA. There is no allegation that Plaintiff sought to grieve the step three hearing or her dismissal. Nor is there an allegation that

20

WCCFT refused to provide representation to Plaintiff in connection with any grievance. As a result, she has failed to exhaust her administrative remedies and may not use her own failure to pursue her administrative remedies to permit her to now litigate a breach of contract claim against WCC.[22]

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss Plaintiff's claims as against WCC and the Individual Defendants with prejudice, together with such other and further relief as the Court may deem just and proper.

Dated: White Plains, New York
        May 24, 2013


                                Yours, etc.


                                GAINES, NOVICK, PONZINI & COSSU &
                                VENDITTI, LLP


                                By: _Denise M. Cossu_____
                                Denise M. Cossu (DC 6900)
                                John M. Murtagh (JM 5815)
                                Attorneys for Defendants
                                11 Martine Avenue, 8th Floor
                                White Plains, New York 10606
                                (914) 288-9595

---

[22] Even more telling is the intentional failure of the FAC to even acknowledge that prior to the step three disciplinary hearing, Plaintiff had been suspended and subsequently removed from the priority list. As a result, when the step three hearing occurred on June 9, 2011 (Compl. at ¶ 66 and FAC at ¶ 76), Plaintiff was no longer an employee and, having been removed from the priority list, was not guaranteed any further employment by WCC (*see*, Memo I at pp. 8-9 and Murtagh Decl. at Exhibits 24 -27). There is no allegation that Plaintiff ever sought to file a grievance with respect to these actions, that WCCFT failed in its duty to represent her in any such grievance, or that any attempt on her part to personally file a grievance would have otherwise been futile. As a result, the breach of contract claim raised here against WCC is also without merit since Plaintiff was no longer covered by the CBA at the time of the step three hearing (*see*, Murtagh Decl. at Exhibit 7, CBA at Article 1.3 a).