UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CAROL LEITNER

                                                          Index No: 12 CIV 3778 (Seibel, C.)

                     Plaintiff,

        -against-

WESTCHESTER COMMUNITY COLLEGE, JOSEPH HANKIN, in his personal and official capacity as President of Westchester Community College, CHET ROGALSKI, in his personal and official capacity as Dean and Vice President of Academic Affairs, JIANPING WANG, in her personal and official capacity as Associate Dean of the Arts and Humanities, and GABRIELLE MILLER , in her personal and official capacity as Curricular Chairperson of the Communications and Media Arts Department

                     Defendants.
-----------------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**


GAINES, NOVICK, PONZINI, COSSU & VENDITTI, LLP
11 Martine Avenue, 8th Floor
White Plains, NY 10606
914-288-9595

Of Counsel
    John M. Murtagh  (JM5815)
    Denise M. Cossu  (DC6900)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………..ii

PRELIMINARY STATEMENT………………………………………………………………….1

ARGUMENT……………………………………………………………………………………..4

    POINT I

    THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THE
    PLAINTIFF'S ADDITIONAL STATE LAW CLAIM AGAINST WCC………………4

    POINT II

    PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED ………………………5

CONCLUSION …………………………………………………………………………………..8

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page Numbers**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ---------------------------------------------------------------------1

*Bell Atlantic v. Twombly*, 540 U.S. 544 (2007)---------------------------------------------------------1, 6

*Board of Education v. Ambach*, 70 N.Y.2d 501 (1987) ----------------------------------------------2, 8

*Castro v. 32 BJ Union*, 800 F. Supp. 2d 586 (S.D.N.Y. 2011). ----------------------------------------6

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991)---------------------------------------------3

*Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99 (2d Cir. 1999) ---------------------3

*Meisel v. Grunberg*, 651 F.Supp.2d 98 (S.D.N.Y. 2009) -----------------------------------------------3

*Miles v. Baruch College*, 2008 U.S. Dist. LEXIS 5534 (E.D.N.Y. 2008) ----------------------------4

*Munno v. Town of Orangetown*, 391 F.Supp.2d 263 (S.D.N.Y. 2005) -------------------------------3

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) -----------------------------4

*Vaughn v. Air Line Pilots Ass'n Int'l*, 604 F.3d 703 (2d Cir. 2010) ----------------------------------3

*White v. White Rose Food*, 237 F.3d 174 (2d Cir. 2001)-----------------------------------------------5

## PRELIMINARY STATEMENT

The defendants Westchester Community College ("WCC"), Joseph Hankin, Chet Rogalski, Jianping Wang, and Gabrielle Miller ("Individual Defendants") (collectively referred to as "Defendants") respectfully submit this memorandum of law in reply to the Plaintiff's memorandum of law submitted in opposition (hereinafter, "Opposition") and in further support of their motion to dismiss the FAC (hereinafter "Motion II").

Plaintiff's speculative and conclusory allegations repeated in the Opposition fail to satisfy the pleading requirements enunciated in *Bell Atlantic v. Twombly,* 540 U.S. 544 (2007), later articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) that:

> [T]he pleading standard *Rule 8* announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Not unlike her Opposition to Motion I, Plaintiff persists in assertions grounded in speculation and fancy, rather than the factual allegations necessary to "nudge" her claims "across the line from conceivable to plausible." *Twombly,* 540 U.S. at 570. Her unsupported overuse of the phrase "bad faith," does not create bad faith, where there is no factual (as opposed to speculative) support for that legal conclusion. The contention that Professor D'Orazio "assured the administration that the WCCFT would provide [Plaintiff] with only a token defense, and

even helped the administration bring disciplinary charges against her" is not supported by any factual allegation, but merely "naked assertions" and speculation "devoid of further factual enhancement," supported by nothing more than Plaintiff's imagination. The conclusion that WCCFT "thus" failed to represent Plaintiff fairly "effectively depriving her of the full use" of the grievance procedures contained in the collective bargaining agreement ("CBA") likewise is not supported by any factual content and there is no allegation in the FAC, nor factual support for the claim that Plaintiff was somehow thwarted in her attempts to file a grievance in connection with the step three hearing or her termination. The use of the term "bad faith" is not a factual allegation, but rather a formulaic label and conclusion that fails to plausibly plead unlawful activity.

There is also no factual support for Plaintiff's assertion that D'Orazio did anything other than look at an already drafted letter; that her alleged conversation with Dean Wang was in "bad faith;" or that either alleged act adversely impacted the Union's representation of Plaintiff during the step three hearing. Given the factual allegations of the FAC, as further narrowed in the Opposition, Plaintiff's claim for a breach of duty of fair representation ("DFR claim") against WCCFT, is admittedly *not* based upon D'Orazio's performance during the step three hearing, but solely upon her prior alleged communications with Professor Miller and Dean Wang. In addition, and in any event, had Plaintiff been dissatisfied with such representation or the result of the Hearing, the CBA provided for a grievance procedure which Plaintiff did not pursue.[1]

---

[1] Remarkably, in *Board of Education v. Ambach*, 70 N.Y.2d 501, 509 (1987), which Plaintiff cites in her Opposition, the fact that the plaintiff teacher had exhausted the grievance process before bringing his action alleging a breach of the collective bargaining agreement was heavily relied upon by the Court in its determination. By contrast, Plaintiff has failed to avail herself of the grievance procedure at any point in the disciplinary process and is time-barred from doing so at this juncture.

2

Also contrary to Plaintiff's claims, there is no "assumption" on the part of WCC that the FAC must "negate" a potential defense. Rather, Plaintiff must allege *a causal connection* resulting from D'Orazio's alleged "undisclosed bad faith conduct;" *i.e.,* her communications with Professor Miller and Dean Wang – the only actual *facts* pled in support of her "bad faith" allegations – and her alleged injuries. *Vaughn v. Air Line Pilots Ass'n Int'l,* 604 F.3d 703 (2d Cir. 2010). The unsupported statement that Plaintiff was "damaged" because the step three hearing resulted in her termination from employment, does not provide the requisite causal connection to the alleged "bad faith" acts and blatantly ignores the glaring lack of any grievance adjudication or refusal on the part of D'Orazio or WCCFT to bring a grievance proceeding on Plaintiff's behalf in accordance with the CBA. Instead, Plaintiff imposes a hopscotch logic, seeking to bootstrap the "discovery" of D'Orazio's alleged "bad faith" to the step three hearing, while at the same time professing that she does not base her DFR claim upon the step three hearing, in an obvious attempt to resurrect claims long since time-barred.

The further objection regarding the Court's reliance upon allegedly "extraneous evidence outside the pleadings," ignores the law which permits the Court to consider not only "facts stated on the face of the complaint" and "documents appended to the complaint or incorporated in the complaint by reference," but also "matters of which judicial notice may be taken." *Meisel v. Grunberg,* 651 F.Supp.2d 98, 107 (S.D.N.Y. 2009), *quoting Leonard F. v. Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir. 1999) even if the corresponding documents are not attached to or incorporated by reference in the complaint. *Munno v. Town of Orangetown,* 391 F.Supp.2d 263, 268 (S.D.N.Y. 2005); *see also, Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991).

3

In this case, the Court may take judicial notice of Plaintiff's undisputed April 21, 2011 suspension and her ultimate removal from the priority list effective May 23, 2011, without converting the dismissal motion to one for summary judgment. In addition, there is no unfairness or surprise arising from WCC's reliance upon these undisputed matters since the underlying documents were attached to the Murtagh Declaration ("Murtagh Decl.") submitted in support of the First Motion to Dismiss ("Motion I") as Exhibits 24 -27. The consequence of these uncontested actions is that at the time of the step three hearing, Plaintiff was not working at WCC and having been removed from the priority list, was not guaranteed any further or future employment. Again, there is no claim that Plaintiff even *attempted* to file a complaint, grievance or arbitration request relative to this action, let alone that any such request was thwarted by D'Orazio, and again, the time to have done so has long since expired. Plaintiff's so-called "discovery" of D'Orazio's alleged "bad faith" does not serve to revive her objections to WCC's actions.

## POINT I

## THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THE PLAINTIFF'S ADDITIONAL STATE LAW CLAIM AGAINST WCC

As discussed in Point I of WCC's Memorandum of Law submitted in support of this application ("Memo II"), WCC relies upon its argument that the Eleventh Amendment bars Plaintiff's federal claims interposed against it. Similarly, the Eleventh Amendment bars Plaintiff's state law claims. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984); *Miles v. Baruch College*, 2008 U.S. Dist. LEXIS 5534 (E.D.N.Y. 2008). In addition, as discussed in Memo II, since all of the federal claims against WCC should be dismissed, this Court should also decline to exercise supplemental jurisdiction over Plaintiff's purported state law claims and dismiss them entirely.

## POINT II

## PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED

Plaintiff concedes that the Plaintiff's breach of contract claim can only proceed against WCC if WCCFT is found to have breached its duty of fair representation. For the reasons set forth in Memo II and below, as well as the submissions of co-defendant WCCFT, Plaintiff has failed to plausibly plead any such breach of WCCFT's duty. As a result, her breach of contract claim against WCC must also fail.

A claim for breach of the duty of fair representation consists of two elements. "First, a union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith. ... Second, if plaintiffs establish the first element of a DFR claim, they must then also prove that there was a causal connection between the union's wrongful conduct and their injuries." *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001) (internal citations omitted). The FAC is unsuccessful in both respects.

In the first place, Plaintiff has failed to plausibly plead bad faith on the part of Ms. D'Orazio, the only purported basis for her claim. The document to which Plaintiff refers, does not amount to "an assurance" that WCCFT was "not defending" Plaintiff in the step three hearing. The actual words, taken out of context by Plaintiff were "I want you to understand that we are not defending her, we are defending the process" (Cossu Decl. at Exhibits 37 and 38). This statement, "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Indeed, this statement does not reflect "bad faith" at all, but rather, is akin to a criminal defense attorney, who may not agree with or even believe in a defendant's innocence, but nonetheless defends the legal process and by so doing, serves the defendant. Similarly, in this case, D'Orazio did not have to approve of Plaintiff's position in order to adequately and appropriately defend her during the disciplinary process. Plaintiff's argument would require a

5

Union representative to be in lock-step agreement with its member in order to represent that member, lest such representation be tainted by bad faith allegations. Such a requirement is neither reasonable nor necessary and Plaintiff cites no legal authority to support the "bad faith" conclusion she seeks. Simply stated, there is no factual support for the legal conclusion that D'Orazio acted in bad faith at any point in her representation of Plaintiff, let alone during the step three hearing.

Secondly, Plaintiff has failed to plausibly plead a "causal connection" between the allegedly "undisclosed bad faith conduct" and Plaintiff's injuries. Plaintiff was represented during the disciplinary process, but the Administration terminated her notwithstanding such representation. Notably, Plaintiff makes it clear that her DFR claim *is not based* upon D'Orazio's conduct at the step three hearing, but at the same time, contends that the *results* of the step three hearing arise from D'Orazio's bad faith. However, the fact that Plaintiff is now unhappy with the results of the step three hearing (having not timely pursued a grievance in accordance with the CBA) does not mean that WCCFT breached its duty of fair representation. *Castro v. 32 BJ Union,* 800 F. Supp. 2d 586 (S.D.N.Y. 2011). The allegation that D'Orazio did not agree with Plaintiff, even if true, does not "nudge" her DFR claims "across the line from conceivable to plausible." *Twombly,* 540 U.S. at 570.

Plaintiff does not dispute that her DFR claim is subject to a four month statute of limitations and that more than four months have transpired since her termination. However, she argues, without citation to any legal authority for her novel proposition, that the time should begin to run from the time of her counsel's document review which, she further contends, revealed "undisclosed bad faith conduct" *inferred* from communications between members of the WCC administration and D'Orazio and resulting in her termination from employment. One

6

of the problems with this analysis is that not only "bad faith" is required to state the DFR claim, but also *injury* resulting from that bad faith. While Plaintiff claims an injury resulting from her termination on July 6, 2011, there is no causal connection to D'Orazio's alleged bad faith conduct "discovered" in November 2012. In fact, WCCFT had fulfilled its obligation to represent Plaintiff during the step three hearing and there is no allegation that WCCFT refused to file a grievance on Plaintiff's behalf or that any attempt by Plaintiff to do so on her own pursuant to the CBA would have been futile. Plaintiff's failure to timely act in furtherance of her contractual rights should not be resurrected by the late filing of the FAC.

Plaintiff also contends that the Court should not consider documents relating to the Plaintiff's suspension and removal from the priority list prior to the step three hearing, claiming that such documents are "extraneous." However, the Court may take judicial notice of these documents, insofar as they constitute employer determinations that impact Plaintiff's status as an employee. The discussion at page 8 of the Opposition regarding the requirements of "notice pleading" and the assertion that the FAC meets those requirements misses the point. As discussed in Memo II, it is undisputed that at the time of the hearing, Plaintiff was no longer working at WCC and having been removed from the priority list, was not guaranteed any further employment by WCC, making even less plausible the claim here that she suffered any injury as a result of D'Orazio's alleged bad faith conduct. Since the alleged bad faith cannot be causally linked to Plaintiff no longer working for WCC, she cannot plausibly plead the requisite injury and as a result, her DFR claims as well as her breach of contract claims against WCC must fail.[2]

Plaintiff concedes that she has failed to exhaust her administrative remedies but asserts that she was excused from doing so because of her DFR claim against WCCFT. However, there

---

[2] Plaintiff's insistence that *"of course"* she *did* contest the legality of her suspension and removal from the priority list is belied by the lack of any grievance filed related to that action.

7

is no allegation that WCCFT prevented her from filing a formal grievance pursuant to the CBA. In fact, D'Orazio had filed a request for arbitration on Plaintiff's behalf, but that request was withdrawn on July 13, 2012, after the Plaintiff commenced this action (Murtagh Decl. at Exhibit 31). There is no allegation that WCCFT refused to represent Plaintiff during the grievance process or that it was withdrawn by WCCFT contrary to Plaintiff's wishes.

In this respect, the case at bar differs significantly from *Board of Education v. Ambach*, 70 N.Y.2d 501 (1987), the only case Plaintiff cites in support of her claim. In *Ambach*, the respondent teacher alleged a breach of a provision of a collective bargaining agreement between the school district and the union and having *exhausted the grievance process established by the agreement*, petitioned for relief on that same grievance. The teacher was not *excused* from first proceeding through the grievance process, but first had to proceed through the union, in accordance with the agreement. That is precisely what the Plaintiff in this case failed to do.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's claims as against Defendants with prejudice, together with such other and further relief as the Court may deem just and proper.

Dated: White Plains, New York
July 8, 2013

GAINES, NOVICK, PONZINI, COSSU & VENDITTI, LLP

By: /s/ Denise M. Cossu
Denise M. Cossu (DC 6900)
John M. Murtagh (JM 5815)
Attorneys for Defendants
11 Martine Avenue, 8th Floor
White Plains, New York 10606
(914) 288-9595