UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CAROL LEITNER,

                Plaintiff,

    - against -

WESTCHESTER COMMUNITY COLLEGE,
JOSEPH HANKIN, in his personal and official
capacity as President of Westchester Community
College, CHET ROGALSKI, in his personal and
official capacity as Dean and Vice President of
Academic Affairs, JIANPING WANG, in her
personal and official capacity as Associate Dean of
the Arts and Sciences, GABRIELLE MILLER, in
her personal and official capacity as Curricular
Chairperson of the Communications and Media
Arts Department, and WESTCHESTER
COMMUNITY COLLEGE FEDERATION OF
TEACHERS LOCAL # 2431,

                Defendants.
------------------------------------X

12-cv-3778 (CS PED)

**ORAL ARGUMENT REQUESTED**

# PLAINTIFF CAROL LEITNER'S MEMORANDUM OF LAW
# IN OPPOSITION TO THE COLLEGE DEFENDANTS' MOTION
# TO DISMISS THE FIRST AMENDED COMPLAINT

                                      MORVILLO ABRAMOWITZ GRAND
                                      IASON & ANELLO P.C.
                                      565 Fifth Avenue
                                      New York, New York 10017
                                      (212) 856-9600
                                      *Attorneys for Plaintiff Carol Leitner*

*Of Counsel*:

Catherine M. Foti
Curtis B. Leitner

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| THE FACTUAL ALLEGATIONS AND LEGAL STANDARD | 3 |
| ARGUMENT | 4 |
| I. THE FAC ADEQUATELY ALLEGES A DFR CLAIM AGAINST THE WCCFT | 4 |
|     A. Professor Leitner's DFR Claim Is Timely | 4 |
|     B. The FAC Adequately Alleges a DFR Claim against the WCCFT Based on the WCCFT's Bad Faith Conduct | 5 |
|         1. WCC Ignores the Factual Allegations in the FAC | 5 |
|         2. WCC's Claim that Professor Leitner Suffered No Injury from the WCCFT's Unlawful Conduct Cannot Succeed on a Motion To Dismiss | 5 |
| II. THE FAC ADEQUATELY ALLEGES A BREACH OF CONTRACT CLAIM AGAINST WCC | 11 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Board of Education v. Ambach*, 70 N.Y.2d 501 (N.Y. 1987)..................................................1, 11

*Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2002) .......................................................6

*Cruz v. Local Union No. 3*, 150 F.R.D. 29 (E.D.N.Y. 1993)..................................................10

*DiFolco v. MSNBC Cable*, 622 F.3d 104 (2d Cir. 2010)........................................................6, 10

*Hartman v. Moore*, 547 U.S. 250, 260 (2006) .........................................................................8

*Hernandez v. Coffey*, 582 F.3d 303 (2d Cir. 2009) .................................................................7

*Miksic v. TD Ameritrade Holding Corp.*, 12-civ-4446, 2013 WL 1803956
   (S.D.N.Y. Mar. 7, 2013) ......................................................................................................7, 9

*Sharkey v. J.P. Morgan Chase & Co.*, 10-civ-3824, 2011 WL 135026
   (S.D.N.Y. Jan. 14, 2011).......................................................................................................8

*Snyder v. Fantasy Interactive*, 11-civ-3593, 2012 WL 569185
   (S.D.N.Y. Feb. 9, 2012)........................................................................................................7

*Starshinova v. Batratchenko*, 11-civ-9498, 2013 WL 1104288
   (S.D.N.Y. Mar. 15, 2013) .....................................................................................................6

## STATUTES AND RULES

Fed. R. Civ. P. 8(2)(a).................................................................................................................7, 8

N.Y.C.P.L.R. 217(2)(a)................................................................................................................5

## **PRELIMINARY STATEMENT**

Professor Leitner discovered documents showing that her union, the Westchester Community College Federation of Teachers LOCAL # 2431 ("WCCFT"), failed to provide her with a good faith defense against retaliatory disciplinary charges pursued by Westchester Community College ("WCC") and the Individual Defendants (collectively the "College Defendants"). Professor Anne D'Orazio, the President of the WCCFT, assured the administration that the WCCFT would provide Professor Leitner with only a token defense, and even helped the administration bring disciplinary charges against her. Thus, the WCCFT "failed to represent [Professor Leitner] fairly—effectively depriving her of the full use" of the contractual grievance procedures available to protect WCC faculty rights. *Board of Education v. Ambach*, 70 N.Y.2d 501, 509 (N.Y. 1987). Since the WCCFT failed to defend Professor Leitner in good faith, Professor Leitner has been denied a fair opportunity to enforce her rights under WCC's Collective Bargaining Agreement ("CBA"). Accordingly, New York law grants Professor Leitner the right to step into the shoes of the union that failed her, and hold WCC accountable for its violations of the CBA. These violations include restricting Professor Leitner's in-class speech in violation of the CBA's academic freedom provision, retaliating against her based on protected in-class speech, and disregarding the disciplinary procedures in place to protect faculty against unfounded student complaints.

In its motion to dismiss, WCC adopts the same approach to Professor Leitner's contract claims as her First Amendment, vagueness, and overbreadth claims. Specifically, because the applicable law does *not* warrant dismissal of Professor Leitner's contract claim, WCC ignores the allegations in the First Amended Complaint ("FAC") and asks the Court to *accept its version*

1

*of the facts*, according to which, not surprisingly, it has done nothing wrong. WCC's approach cannot succeed on a motion to dismiss.

*First*, WCC argues that Professor Leitner's duty of fair representation ("DFR") claim against the WCCFT, which is a prerequisite to her contract claim against WCC, is untimely. But WCC incorrectly assumes that Professor Leitner's DFR claim is based on Professor Anne D'Orazio's performance at the step three hearing, when, in fact, the FAC explains in detail that Professor Leitner's DFR claim is based on Professor D'Orazio's *undisclosed* bad faith conduct. WCC does not dispute that Professor Leitner did not know about Professor D'Orazio's bad faith communications with the administration until discovery was conducted in this case, and therefore, Professor Leitner's DFR claim is timely.

*Second*, WCC argues that Professor D'Orazio's performance at Professor Leitner's step three hearing cannot support a DFR claim. Again, WCC ignores the basis of Professor Leitner's DFR claim: Professor D'Orazio's undisclosed bad faith conduct—*e.g.*, assisting the WCC administration with a disciplinary letter without telling Professor Leitner, and engaging in an "off the record" conversation with Dean Jianping Wang, during which Professor D'Orazio assured Dean Wang that the WCCFT would provide Professor Leitner only a token defense against disciplinary charges.

*Third*, relying on *extraneous evidence* outside the pleadings, WCC argues that Professor Leitner was not "damaged" by the WCCFT's beach of its duty of fair representation because Professor Leitner was suspended, and removed from the adjunct seniority list (which entitles her to courses ahead of less senior faculty), before her step three hearing. This argument fails for a number of reasons. As an initial matter, the argument relies on evidence that is not properly before the Court, and improperly seeks to "convert" WCC's motion to dismiss into a motion for

summary judgment. Further, the argument assumes that the FAC is required to negate a potential defense—*i.e.*, that an alternative explanation for Professor Leitner's injuries exists—when the FAC is only required to provide reasonable notice of the basis for Professor Leitner's claims. Additionally, WCC's "damages" argument is based on a strained reading of the FAC, which incorrectly assumes that WCC's retaliatory conduct and the WCCFT's bad faith conduct had nothing to do with Professor Leitner's suspension and removal from the adjunct priority list. Finally, and most obviously, Professor Leitner clearly was "damaged" by the step three hearing because it resulted in her *termination* from the WCC, depriving her of the opportunity to teach, tarring her employment record, and depriving her of unemployment benefits.

*Finally*, WCC argues that Professor Leitner's contract claim fails because she failed to exhaust administrative remedies. This argument is frivolous. The New York Court of Appeals has held, *in a decision described and cited by WCC*, that a plaintiff need not exhaust administrative remedies when she adequately pleads a DFR claim—which is the case here.

## THE FACTUAL ALLEGATIONS AND LEGAL STANDARD

Professor Leitner fully incorporates the "Factual Allegations" and "Legal Standard" Sections of her original Memorandum of Law in Opposition to the Defendants' Motion to Dismiss, dated December 7, 2012, pp. 3-8, and her Memorandum of Law in Opposition to the Union Defendant's Motion to Dismiss, pp. 2-7.[1]

---

[1] For clarity and ease of reference, Professor Leitner respectfully requests that the Court first review Professor Leitner's original Memorandum of Law in Opposition to the Defendants' Motion to Dismiss, dated December 7, 2012. Second, the Court should review Professor Leitner's Memorandum of Law in Opposition to the Union Defendant's Motion to Dismiss, which incorporates the "Factual Allegations" Section from the original opposition. Third, the Court should review this Memorandum of Law in Opposition to the College Defendants' Motion to Dismiss, which incorporates the "Factual Allegations" and "Legal Standard" Sections, as well as the arguments, from the other two memoranda.

## ARGUMENT

Professor Leitner incorporates the arguments in her original Memorandum of Law in Opposition to the Defendants' Motion to Dismiss, pp. 9-35, and responds to the Memorandum of Law in Support of the College Defendants' Motion to Dismiss the First Amended Complaint as follows:

### I. THE FAC ADEQUATELY ALLEGES A DFR CLAIM AGAINST THE WCCFT

WCC argues that Professor Leitner may not pursue her contract claim against WCC, *see* FAC, ¶¶ 146-151 (Count 10), because Professor Leitner has not adequately alleged a DFR claim against the WCCFT. *See* WCC Br., 14-18. WCC's arguments relating to Professor Leitner's DFR claim are unavailing.

#### A. Professor Leitner's DFR Claim Is Timely

Initially, WCC contends that Professor Leitner's DFR claim is untimely. *See* WCC Br., 14-15. Specifically, WCC argues that Professor Leitner should have known about her DFR claim when she was terminated on July 6, 2011. *Id.*, at 15. WCC also asserts, with no explanation, that Professor Leitner's reliance on the "date of her counsel's document review[] is unavailing." *Id.* This argument fails because Professor Leitner's DFR claim is based on Professor D'Orazio's *undisclosed* bad faith conduct. Professor Leitner did not know, and could not have reasonably known, that the WCCFT assured the administration that it was "not defending" Professor Leitner in the disciplinary proceedings against her, *see* FAC, ¶¶ 66-67, until Professor Leitner's counsel reviewed evidence of Professor D'Orazio's communications with the WCC administration during discovery in this case, after November 9, 2012. *See* Supp. Leitner Decl., Ex. 23 (letter requesting pre-motion conference to amend complaint based on newly discovered evidence). Professor Leitner filed the FAC within four months of that time, *see* N.Y.C.P.L.R.

4

217(2)(a), and therefore her DFR claim is timely. *See* Memorandum of Law in Opposition to the Union Defendant's Motion to Dismiss, Section III, pp. 18-19, which Professor Leitner incorporates here by reference.

### B. The FAC Adequately Alleges a DFR Claim against WCCFT Based on the WCCFT's Bad Faith Conduct

#### 1. WCC Ignores the Factual Allegations in the FAC

WCC argues that the FAC fails to state a DFR claim against the WCCFT. Specifically, WCC contends that Professor Leitner's dissatisfaction with the defense provided by Professor D'Orazio at the step three hearing is insufficient to state a DFR claim. *See* Br. at 17 (arguing that it "is not enough" that "Plaintiff may believe that the step three hearing may have been handled differently or that D'Orazio may have made additional arguments"). But that is *not* the basis of Professor Leitner's DFR claim. Like the WCCFT, the WCC ignores the detailed allegations in the FAC that support the reasonable inference that Professor D'Orazio's undisclosed communications with the administration constitute bad faith conduct in breach of the WCCFT's duty of fair representation. *See* Memorandum of Law in Opposition to the Union Defendant's Motion to Dismiss, Section II, pp. 15-18, which Professor Leitner incorporates here by reference.

#### 2. WCC's Claim that Professor Leitner Suffered No Injury from the WCCFT's Unlawful Conduct Cannot Succeed on a Motion To Dismiss

WCC also argues that Professor Leitner was not "damaged" by the WCCFT's bad faith conduct because Professor Leitner was suspended during the spring 2011 semester, and removed from the adjunct priority list of the Communications Department, before her step three hearing. *See* WCC Br., 17-18. WCC's argument relies on documents *extraneous* to the FAC, in particular, two letters written by individual defendants: (1) an April 21, 2011 letter from Dean Wang stating that Professor Leitner was "suspended with pay" during the spring 2011 semester

5

based on her "interactions with a former student"; and (2) a May 12, 2011 letter from President Hankin that removed Professor Leitner from her department's priority list "[b]ased on the results of our investigation concerning the event on April 19." *See* WCC Br., 17-18; Declaration of John Murtagh ("Murtagh Decl."), Exs. 26 and 27. This argument, which is *not directed to the pleadings*, fails for three reasons.

First, WCC's argument relies on letters that are not properly before the Court. On a motion to dismiss, the Court may consider "facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable*, 622 F.3d 104, 111 (2d Cir. 2010). The Court may also consider a document "where the complaint relies heavily on its terms and effect, thereby rendering the document integral to the complaint." *Id.* (citations and quotations omitted); *see also Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is *a necessary prerequisite* to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (emphasis added). The FAC neither incorporates by reference nor "heavily relies" on the "terms or effect" of Dean Wang's April 21 letter or President Hankin's March 21 letter, and therefore those documents—and any argument predicated on them—cannot be considered on WCC's motion to dismiss.

Further, WCC may not "convert" its motion to dismiss to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Starshinova v. Batratchenko*, 11-civ-9498, 2013 WL 1104288, *1 (S.D.N.Y. Mar. 15, 2013) ("If the parties present materials *outside the pleadings*, the court may consider them only by converting the motion to dismiss into a motion for summary judgment and providing all parties with a 'reasonable opportunity' to present pertinent material. This conversion is 'strictly enforced' and 'mandatory.'"). WCC had the opportunity to preview

6

its arguments to dismiss Professor Leitner's DFR and contract claims in a written submission to the Court, followed by a pre-motion conference on February 26, 2013. *See* Docket No. 33; Supp. Leitner Decl. Ex. 25 (WCC's pre-motion submission). However, to date WCC has given *no indication* that it would "convert" its motion to dismiss into a motion for summary judgment based on extraneous documents related to the issue of "damages." And in the absence of formal notice from WCC, the Court cannot "convert" WCC's motion because Professor Leitner has not had the opportunity take discovery *to meet WCC's factual assertion*—which will be hotly contested in this litigation—that Professor Leitner's suspension and removal from the priority list were appropriate.[2] *See Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) ("[F]ormal notice [of conversion to a summary judgment motion] is not required where a party should reasonably have recognized the possibility that the motion might be converted into one for summary judgment and was neither taken by surprise *nor deprived of a reasonable opportunity to meet the facts outside the pleadings*.") (emphasis added); *see also Snyder v. Fantasy Interactive*, 11-civ-3593, 2012 WL 569185, *2 (S.D.N.Y. Feb. 9, 2012) ("The Court declines to convert this motion to dismiss into one for summary judgment because Plaintiffs have not had the opportunity to conduct discovery.").

Second, even if the Court were to consider WCC's extraneous documents, WCC's argument that Professor Leitner was not "damaged" is inconsistent with the notice pleading standard of Fed. R. Civ. P. 8(a)(2). *See Miksic v. TD Ameritrade Holding Corp.*, 12-civ-4446,

---

[2] The Court has permitted document discovery concerning Professor Leitner (but not other issues), which has resulted in a discovery dispute over WCC's unwillingness to search for electronic documents with the term "Leitner." *See* Docket No. 47 (letter from Curtis Leitner to Judge Seibel describing the dispute). The Court referred the parties' discovery dispute to Judge Davison on June 12, 2013. *See* Docket No. 46. Importantly, Professor Leitner's suspension and removal from the seniority list raises critical factual issues concerning whether those adverse actions were (1) retaliatory and (2) affected by the WCCFT's bad faith failure to defend Professor Leitner. Moreover, these factual issues require discovery beyond issues *concerning Professor Leitner*—for example, discovery concerning how WCC and the WCCFT have dealt with similar student complaints involving other WCC professors.

7

2013 WL 1803956, *1 (S.D.N.Y. Mar. 7, 2013) (a complaint need only provide "the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"); *Sharkey v. J.P. Morgan Chase & Co.*, 10-civ-3824, 2011 WL 135026, *3 (S.D.N.Y. Jan. 14, 2011) (stating that "to satisfy Rule 8(a)(2) specific facts are not necessary"). The FAC satisfies Rule 8(a)(2) by alleging facts that allow the Court to draw the reasonable inference (1) that Professor Leitner engaged in protected speech (under both the federal and state constitutions and the CBA), *see* FAC, ¶¶ 43-48, 73-75, (2) that the defendants initiated disciplinary proceedings, *which would include the retaliatory conduct of suspending her and removing her from the seniority list,* and ultimately terminated Professor Leitner because of her protected speech, *see id.*, ¶¶ 54, 60, 62-65, 69-75, and (3) that the WCCFT assisted the administration, and failed to provide Professor Leitner a good faith defense, in connection with those adverse actions. *See* ¶¶ 9, 55-61, 66, 68-69. Having made that showing, the FAC is not required to *negate alternative explanations* for the adverse actions suffered by Professor Leitner. *Cf. Hartman v. Moore*, 547 U.S. 250, 260 (2006) ("[W]e say that upon a prima facie showing of retaliatory harm, *the burden shifts to the defendant* official to demonstrate that even without the impetus to retaliate he would have taken the action complained of (such as firing the employee)."). Of course, WCC and the WCCFT are free to make arguments based on Professor Leitner's suspension and removal from the seniority list *to defend* against her claims, but those arguments cannot succeed on the pleadings.

At the same time that WCC exaggerates the requirements of Fed. R. Civ. P. 8(a)(2), WCC urges a reading of the FAC that artificially limits the WCCFT's bad faith conduct to the step three hearing—and nothing else. Specifically, WCC's argument *assumes* that Professor Leitner's mid-semester suspension, and her removal from the seniority list, were entirely lawful—*i.e.*, that these adverse actions *had nothing to do* with the WCC administration's

8

retaliatory conduct or the WCCFT's bad faith conduct. But that is not Professor Leitner's position. Professor Leitner's position is that the adverse actions taken against her after she engaged in protected speech, including her suspension and removal from the seniority list, were retaliatory, and the FAC's allegations provide "fair notice" of that position.

In particular, the FAC alleges that Dean Wang requested a step three hearing to terminate Professor Leitner on March 21, 2011, and then renewed her request for a hearing based on additional disciplinary charges in May 2011. *See* FAC, ¶¶ 69, 73-75. According to WCC's extraneous documents, Professor Leitner was suspended on April 21, 2011, and then removed from the adjunct priority list on May 12, 2011. WCC Br., 17-18; Murtagh Decl., Exs. 26 and 27. Thus, the FAC alleges that Professor Leitner's suspension and removal from the priority list took place *in the midst of*, and *was part of*, the campaign of retaliation against her by the WCC administration. *See* FAC, ¶¶ 43-54, 62-65, 69-75. The FAC also alleges that, during the course of the administration's retaliatory conduct, the WCCFT "acceded and facilitated the illegal conduct" of the WCC administration by "helping administrators pursue disciplinary charges against Professor Leitner, and assuring the administration that the WCCFT would provide Professor Leitner only a token defense." *Id.*, ¶ 9. Further, Professor D'Orazio told the administration that the WCCFT was "not defending" Professor Leitner, and would only do what was necessary to "protect the union" because "Carol may turn against us." *Id.* ¶ 66. Professor D'Orazio's bad faith conduct contributed to Dean Wang's decision to seek formal discipline against Professor Leitner instead of resolving student complaints informally. *Id.*, ¶¶ 68, 142. These factual allegations provide "fair notice," *Miksic*, 2013 WL 1803956, at *1, that the

9

WCCFT's misconduct, including its assurance that it would not really defend Professor Leitner, was implicated in Professor Leitner's suspension and removal from the priority list.[3]

Third, putting aside that WCC's argument goes beyond the pleadings and misconstrues the FAC, the argument that Professor Leitner was not injured by the WCCFT's conduct fails on its own terms. Even if Professor Leitner did not contest the legality of her suspension and removal from the priority list—which, of course, she *did*—the adverse determination at the step three hearing caused her substantial injury. Most obviously, WCC *fired* Professor Leitner based on the alleged misconduct considered at the step three hearing—specifically, violations of WCC's "courtesy and respect" policy, even though she worked at WCC for nearly 30 years. *See* FAC, ¶ 79. As Professor Leitner specifically alleges in the FAC, her termination has ruined her employment record and caused her to lose unemployment benefits and incur legal fees and costs. *See* FAC, Request for Relief; Supp. Leitner Decl., Ex. 26 (denial of unemployment insurance benefits because of a "violation of an employer's policy"); *see also Cruz v. Local Union No. 3*, 150 F.R.D. 29, 33 (E.D.N.Y. 1993) ("Upon a finding of unfair representation, the court must fashion an appropriate remedy," which may include attorney's fees), *reversed in part on other grounds by Cruz v. Local Union No. 3*, 34 F.3d 1148 (2nd Cir. 1993). Additionally, even after WCC removed Professor Leitner from her department's priority list, she was *still entitled* to obtain courses in the same manner as any non-senior adjunct professor. *See* Supp. Leitner Decl., Ex. 24, CBA, § 3.9(d)(3) ("In the event that additional sections still remain to be assigned, new

---

[3] Because the FAC provides fair notice that Professor Leitner's suspension and removal from the seniority list was related to the defendants' unlawful conduct, the Court cannot consider WCC's extraneous documents for an additional reason: they raise material issues of fact. An extraneous document cannot be considered on a motion to dismiss unless it is "clear that there exist no material disputed issues of fact *regarding the relevance of the document.*" *DiFolco*, 622 F.3d at 11 (emphasis added). Here, Dean Wang's reference to improper "interactions with a former student," and President Hankin's assertion that WCC conducted an "investigation concerning" those "interactions," raise substantial issues fact—*i.e.*, whether WCC's suspension and investigation of Professor Leitner, and her removal from the priority list, were retaliatory, and whether the WCCFT failed to provide a good faith representation to Professor Leitner in connection those adverse actions.

10

or adjunct faculty with less than (20) semesters [, *i.e.*, who are not on the priority list,] may be assigned those course sections."). Moreover, one element of damages Professor Leitner is seeking is reinstatement, which can be granted even if she is not restored to the priority list. *See* FAC, ¶ 12.

## II. THE FAC ADEQUATELY ALLEGES A BREACH OF CONTRACT CLAIM AGAINST WCC

WCC argues that Professor Leitner's contract claim should be dismissed because she "failed to comply with or even attempt to comply with the grievance procedures of the CBA . . . ." WCC Br., 19. Although WCC repeats the same "failure to exhaust" argument over and over again, *see* WCC Br., 20-21, each iteration of the argument lacks merit for the same reason.

Specifically, WCC concedes (correctly) that "when the union fails in its duty of fair representation . . . the employee [can] *go beyond the agreed upon procedure and litigate a contract issue directly against the employer.*" WCC Br, 18 (citing *Board of Education v. Ambach*, 70 N.Y. 2d 501 (N.Y. 1987)). Thus, as described Professor Leitner's Memorandum of Law in Opposition to the Union Defendant's Motion to Dismiss, Section IV, pp. 19-21, when a plaintiff adequately alleges that her union breached its duty of fair representation, she is *not* required to exhaust administrative remedies before bringing a contract claim against her employer. Because the FAC adequately alleges that the WCCFT breached its duty of fair representation, *see* Section I. above, pp. 4-11, WCC's "failure to exhaust" argument lacks merit.

Finally, WCC argues in passing that Professor Leitner's contract claim fails because she "was no longer covered by the CBA at the time of the step three hearing." WCC Br., 21 n. 22. Although WCC cites Section 1.3(a) of the CBA to supports it argument, that provision actually demonstrates that Professor Leitner *was protected by the CBA* during the step three hearing. Section 1.3(a) states that the CBA applies to "regular part-time professional staff employees . . .

11

who are employed by" WCC. Supp. Leitner Decl., Ex. 24, CBA § 1.3(a). Since Professor Leitner was not terminated by WCC until *after* the step three hearing, she was clearly "employed" by WCC during the hearing. Moreover, the fact that the WCCFT represented Professor Leitner at the step three hearing shows that she was covered by the CBA at that time. Finally, WCC's argument *assumes* that Professor Leitner was *legitimately* removed from the priority list. For the reasons stated in Sections I.B.2 above, pp. 5-11, WCC's assumption goes outside the pleadings and raises disputed issues of fact that cannot be resolved on a motion to dismiss.

## CONCLUSION

WCC's arguments for dismissal of Professor Leitner's contract claims lack merit and go beyond the proper bounds of a motion to dismiss. Thus, the WCCFT's motion to dismiss Professor Leitner's contract claim should be denied. Furthermore, for the reasons explained in Professor's Leitner original Opposition to the Defendants' Motion to Dismiss, the Defendants' motion to dismiss Professor Leitner's First Amendment retaliation, vagueness, and overbreadth claims should be denied in its entirety.

Dated: New York, New York
       June 24, 2013

                                 MORVILLO ABRAMOWITZ GRAND
                                 IASON & ANELLO P.C.

                                 By: _____
                                 Catherine M. Foti
                                 Curtis B. Leitner
                                 565 Fifth Avenue
                                 New York, New York 10007
                                 Tel.: (212) 856-9600

                                 *Attorneys for Plaintiff Carol Leitner*